LATHAM & WATKINS LLP
   Daniel M. Wall (Bar No. 102580)
   *dan.wall@lw.com*
   Timothy L. O'Mara (Bar No. 212731)
   *tim.o'mara@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

*Attorneys for Defendants Ticketmaster LLC
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLEN LEE, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>TICKETMASTER LLC, a Virginia corporation, LIVE NATION ENTERTAINMENT, INC., a Delaware corporation,<br><br>        Defendants. | Case Nos. 3:18-cv-05987-VC & 3:18-cv-06750-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>The Honorable Vince Chhabria<br><br>Hearing Date:  January 31, 2019<br>Hearing Time:  10:00 am<br>Courtroom: 4 |
| MAHMOUD AMERI, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>TICKETMASTER LLC, and DOES 1-10, inclusive<br><br>        Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

NOTICE OF MOTION AND MOTION ........................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 1

        A.      Plaintiff Ameri's Claims and Ticket Purchases ...................................... 1

        B.      Plaintiff Lee's Claims and Ticket Purchases .......................................... 2

        C.      Terms of Use and Conditions Related to Plaintiffs' Purchases ............. 3

                1.      Plaintiff Ameri and Plaintiff Lee's Ticketmaster.com
                        Purchases ..................................................................................... 3

                2.      Plaintiff Lee's TicketExchangeByTicketmaster.com
                        Purchases ..................................................................................... 5

                3.      The Terms of Use and Condition Contain a Broad
                        Arbitration Clause and Class Action Waiver ............................. 7

III.    LEGAL STANDARD ........................................................................................... 8

IV.     ARGUMENT ........................................................................................................ 9

        A.      Ticketmaster's Terms of Use and Conditions Constitute a Valid,
                Enforceable Agreement ............................................................................ 9

        B.      The Arbitration Clause Plainly Encompasses the Dispute at Issue
                Here ........................................................................................................ 12

        C.      To the Extent There Is a Dispute About Arbitrability, That
                Question Must Be Submitted to the Arbitrator ..................................... 13

V.      CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Allied-Bruce Terminix Cos., Inc., v. Dobson*,
    513 U.S. 265 (1995) ................................................................................................... 8

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006) ...................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .............................................................................................. 1, 8

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ................................................................................ 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ............................................................................ 8, 13

*Chung v. Nemer*,
    No. C 12-4608, 2012 WL 5289414 (N.D. Cal. Oct. 25, 2012) ............................ 14

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................................................. 15

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583, 2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5, 2014) .................... 9, 10

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) .................................................................................................. 1

*DeVries v. Experian Info. Sols., Inc.*,
    No. 16 Civ 02953, 2017 U.S. Dist. LEXIS 26471 (N.D. Cal. Feb. 24, 2017) ..................... 10

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007) .................................................................. 12

*Farrow v. Fujitsu Am., Inc.*,
    37 F. Supp. 3d 1115 (N.D. Cal. 2014) .................................................................. 13

*Fteja v. Facebook, Inc.*,

    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................................ 11

*Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*,

    No. 12-CV-6125, 2014 U.S. Dist. LEXIS 100250 (W.D. Ark. July 23, 2014) ................... 11

*Graf v. Match.com, LLC*,

    No. CV 15-3911, 2015 WL 4263957 (C.D. Cal. July 10, 2015) .......................................... 11

*Guidewire Software, Inc. v. Chookaszian*,

    No. 12-CV-03224, 2012 U.S. Dist. LEXIS 156363 (N.D. Cal. Oct. 31, 2012) ............... 9, 15

*Johnmohammadi v. Bloomingdale's, Inc.*,

    755 F.3d 1072 (9th Cir. 2014) ........................................................................................... 13

*Johnson v. Oracle Am., Inc.*,

    No. 17-cv-05157, 2017 WL 8793341 (N.D. Cal. Nov. 17, 2017) ....................................... 15

*Khraibut v. Chahal*,

    No. C15-04463, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016) .......................................... 13

*Lewis v. UBS Fin. Servs. Inc.*,

    818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................................................. 13

*Loewen v. Lyft, Inc.*,

    129 F. Supp. 3d 945 (N.D. Cal. 2015) (same) ................................................................... 13

*McLellan v. Fitbit, Inc.*,

    No. 3:16-cv-00036, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ..................................... 15

*Mohamed v. Uber Techs., Inc.*,

    848 F.3d 1201 (9th Cir. 2016) ........................................................................................... 14

*Molina v. Scandinavian Designs, Inc.*,

    No. 13-CV-04256, 2014 WL 1615177 (N.D. Cal. Apr. 21, 2014) ..................................... 13

*Momot* v. *Mastro*,

    652 F.3d 982 (9th Cir. 2011) ............................................................................................. 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

    460 U.S. 1 (1983) ................................................................................................................ 9

*Moule v. UPS*,

    No. 1:16-cv-00102, 2016 U.S. Dist. LEXIS 88270 (E.D. Cal. July 7, 2016) ................ 10, 11

*Nevarez v. Forty Niners Football Co., LLC*,

    No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208 (N.D. Cal. Aug. 15, 2017) ............. 1, 11

*Nitsch v. DreamWorks Animation SKG, Inc.*,

    100 F. Supp. 3d 851 (N.D. Cal. 2015) .............................................................. 9, 15

*Peterson v. Lyft*, No. 16-cv-07343,

    2018 WL 6047085 (Nov. 19, 2018) .................................................................. 13

*Qualcomm Inc. v. Nokia Corp.*,

    466 F.3d 1366 (Fed. Cir. 2006) ....................................................................... 9, 15

*Rodriguez v. Experian Servs. Corp.*,

    No. CV 15-3553-R, 2015 U.S. Dist. LEXIS 187273 (C.D. Cal. Oct. 5, 2015) .................... 10

*Saizhang Guan v. Uber Techs., Inc.*,

    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................................ 11

*Simula, Inc. v. Autoliv, Inc.*,

    175 F.3d 716 (9th Cir. 1999) ............................................................................ 9

*Swift v. Zynga Game Network, Inc.*,

    805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................ 10

*Ticketmaster Corp. v. Tickets.com, Inc.*,

    No. CV 997654, 2003 U.S. Dist. LEXIS 6483 (C.D. Cal. Mar. 7, 2003) ........................... 12

*Ticketmaster LLC. v. RMG Techs., Inc.*,

    507 F. Supp. 2d 1096 (C.D. Cal. 2007) .............................................................. 12

*Tuminello v. Richards*,

    504 F. App'x 557 (9th Cir. 2013) ..................................................................... 14

*U.S. v. Drew*,

    259 F.R.D. 449 (C.D. Cal. 2009) ..................................................................... 10

**STATUTES**

9 U.S.C. § 2 ............................................................................................... 8

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on January 31, 2019 at 10:00 am, or as soon thereafter as the matter may be heard before the Honorable Vince Chhabria, United States District Judge, in Courtroom 4 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Ticketmaster LLC ("Ticketmaster") and Defendant Live Nation Entertainment, Inc. ("Live Nation") (together, "Defendants") will and do hereby move the Court for an order compelling arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and dismissing all claims in the above-entitled actions[1] in favor of arbitration, or, alternatively, staying all proceedings in these actions pending conclusion of the arbitration.

This motion is based on (1) this Notice of Motion and Motion, (2) the Memorandum of Points and Authorities, (3) the Declarations of Kimberly Tobias, Shawn Moon, and Timothy O'Mara, (4) all other papers submitted in support of the Motion, (5) the records on file in this case, (6) the arguments of counsel, and (7) any other matter that the Court may properly consider, or that may be presented to the Court at the hearing.

Dated: November 30, 2018                    Respectfully submitted,

By: *Timothy L. O'Mara*
Timothy L. O'Mara
LATHAM & WATKINS LLP

*Attorneys for Defendants Ticketmaster*
*LLC and Live Nation Entertainment, Inc.*

---

[1] Pursuant to the Court's Scheduling Order in the *Ameri* action (ECF No. 24), Defendants are submitting one consolidated motion and memorandum of points and authorities for both of the above-entitled actions.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      INTRODUCTION

Plaintiffs Mahmoud Ameri and Allen Lee brought these putative class actions against Ticketmaster (and, in *Lee*, against Ticketmaster's parent, Live Nation, too) for alleged damages related to tickets that they purchased from Ticketmaster's websites.  Mr. Ameri and Mr. Lee, however, agreed—on numerous occasions—to arbitrate the claims asserted in these cases.  In particular, in order to purchase a ticket on <u>any</u> of Ticketmaster's websites, Mr. Ameri and Mr. Lee were required to affirmatively accept "Terms of Use" or "Terms and Conditions."  They did so, at a minimum, at the time they created their Ticketmaster accounts, or when they purchased their tickets—or both.  And those Terms contain a mandatory arbitration clause and class action waiver which broadly applies to <u>all</u> disputes and claims, including the tickets sold or distributed by Ticketmaster.

The "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), codified in the Federal Arbitration Act, requires that federal courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Courts routinely enforce arbitration clauses in terms of use exactly like those presented to and accepted by Plaintiffs Ameri and Lee.  *See infra* Section IV.A (collecting cases).  Indeed, numerous courts—including a court in this district—have enforced the very Ticketmaster Terms at issue here.  *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208, at *22-26 (N.D. Cal. Aug. 15, 2017).  And because there is no question that Plaintiffs' claims fall squarely within the arbitration clauses at issue, this Court should do the same.  Mr. Ameri's claims against Ticketmaster, and Mr. Lee's claims against Ticketmaster and Live Nation, are therefore subject to binding arbitration, and cannot be adjudicated in court.  These cases should therefore be dismissed or, in the alternative, stayed.

## II.     FACTUAL BACKGROUND

### A.      Plaintiff Ameri's Claims and Ticket Purchases

Plaintiff Mahmoud Ameri alleges that, "[o]n June 16, 2017, while physically located in

Fremont, California, [he] used Ticketmaster's ticketing website to purchase Ticketmaster verified tickets to the International Champions Cup soccer match between Real Madrid and Manchester United, to be held the following month in Santa Clara." *Ameri* Compl. ¶ 11.  Ticketmaster's records confirm that, on June 16, 2017, a purchaser named Mahmoud Ameri (who provided an address in Fremont, California) purchased tickets on www.ticketmaster.com to the International Champions Cup soccer match between Real Madrid and Manchester United, to be held in the following month, on July 23, 2017, in Santa Clara. *See* S. Moon Decl. in Supp. of Mot. to Compel Arb. ¶ 5 ("Moon Decl.").

Based on that purchase from www.ticketmaster.com, Mr. Ameri purports to bring a class action on behalf of a putative class of consumers who "purchased tickets on a Ticketmaster secondary ticket exchange" during "the period from 4 years prior to the filing of this action through the trial date." *Ameri Compl.* ¶¶ 22, 6.  The crux of Mr. Ameri's claims is his allegation that Ticketmaster, through a variety of means, "systematically orchestrates and facilitates the bulk sales of tickets on its website to professional resellers and the immediate resale of these same tickets, at inflated prices, on Ticketmaster's secondary exchanges." *Id*. ¶ 1.  Mr. Ameri claims that, as a result of this alleged conduct, Ticketmaster has violated the Cartwright Act, California Penal Code, and California Business and Professions Code Section 17200—and he and his fellow putative class members have "suffered harm that includes but is not limited to the increased price paid for event tickets." *Id*. ¶ 63; *see also id*. ¶ 68, Prayer for Relief ¶ 8.

### B.     Plaintiff Lee's Claims and Ticket Purchases

Plaintiff Allen Lee alleges that he "is a resident of Millbrae, California," and that he "purchased tickets, originally sold by Ticketmaster, on the secondary market, specifically at ticketexchangebyticketmaster.com, for nine sporting events held in 2016 through 2018." *Lee* Compl. ¶ 7.  Ticketmaster's records confirm that, as alleged in the complaint, a purchaser named Allen Lee (who provided an address in Millbrae, California) purchased secondary tickets to numerous sporting events during the period from 2016 to 2018. *See* Moon Decl. ¶ 8; *compare Lee* Compl.  ¶ 7.   As noted above, Mr. Lee alleges that he made those purchases on www.ticketexchangebyticketmaster.com, a Ticketmaster ticket resale website focused on

secondary tickets for sporting events.  That site is a domain which sits on Ticketmaster's TicketsNow platform (www.ticketsnow.com); it acts as a navigation page which links buyers to team- or league-branded event pages on Ticketmaster's various websites—specifically, www.ticketmaster.com,  www.ticketsnow.com,  and  www.ticketexchangebyticketmaster.com. K. Tobias in Supp. of Mot. to Compel Arb. ¶ 5 ("Tobias Decl.").  Ticketmaster's sales data confirms that, during the period alleged (i.e., 2016 to 2018),[2] Mr. Lee used both www.ticketmaster.com and www.ticketexchangebyticketmaster.com to purchase secondary tickets, including (as alleged in his complaint) tickets to nine sporting events on www.ticketexchangebyticketmaster.com, as well as tickets to thirteen sporting events on www.ticketmaster.com.  Moon Decl. ¶¶ 9-10.

Based on these purchases, Mr. Lee (like Mr. Ameri) purports to bring a class action on behalf of a putative class of consumers who "purchased a secondary market Ticketmaster ticket." *Lee* Compl. ¶ 45.  The crux of Mr. Lee's claims is his allegation that Ticketmaster and its parent, Live Nation, have "facilitated the sale of tickets to the secondary market by secretly implementing a 'Resale Partner Program' supported by TradeDesk, … in order to receive a second cut on tickets."  *Id*. ¶ 3.  According to Mr. Lee, this alleged conduct is "unfair to consumers," like him, because consumers "typically pay more on the secondary market for the tickets themselves."  *Id*. ¶ 5.  Mr. Lee therefore "seeks restitution of money paid to Ticketmaster for secondary market sales," on grounds that Defendants' alleged conduct violates California Business and Professions Code Section 17200, and also constitutes unjust enrichment.  *Id*. ¶ 6; *see also id*. ¶ 53.

### C.    Terms of Use and Conditions Related to Plaintiffs' Purchases

#### 1.    *Plaintiff Ameri and Plaintiff Lee's Ticketmaster.com Purchases*

In order to purchase tickets on www.ticketmaster.com (the site that Mr. Ameri used to make his purchase, and the site that Mr. Lee used most frequently to make his purchases, *see* Moon Decl. ¶¶ 5, 10), Plaintiffs were required to create a Ticketmaster account and agree to the "Terms of Use."  *See* Tobias Decl. ¶¶ 6-8 & Exs. A, B.  This is true today, and was true at all times during

---

[2] Ticketmaster's data also shows that Mr. Lee used both www.ticketmaster.com and www.ticketexchangebyticketmaster.com to purchase tickets prior to 2016.  Moon Decl. ¶ 8. However, since the complaint focuses on the period from 2016 to 2018, this Motion does too.

the periods alleged.  *See id*. ¶ 8.  Specifically:

- To create an account on www.ticketmaster.com, a user must provide personal information (first and last name, email address, zip code, country of residence), create a password, and click a "Sign Up" button.  *Id*. ¶ 7 & Ex. A.  Immediately above that button is the following language: "By submitting, you agree to our **Terms** and **Purchase Policy**, and understand your information will be used as described in our **Privacy Policy**."  *Id*.  As shown below, the word "**Terms**" is in bold, contrasting color text, and is hyperlinked to the full text of those Terms.  *Id*.



In addition to agreeing to the Terms of Use at the outset, when they created their accounts, Plaintiffs also agreed to the Terms of Use on www.ticketmaster.com at other points in time, including when they used that website and made ticket purchases at issue in these cases:

- First, to browse and select the tickets for purchase, Plaintiffs would have navigated through various pages on Ticketmaster's website; virtually all of those pages (including the homepage and event pages) clearly informed Plaintiffs that, by using the site (irrespective of whether they ultimately purchased tickets), they were agreeing to the Terms of Use.  Tobias Decl. ¶¶ 9-12 & Exs. C-E.  For instance, the current homepage contains a link across the bottom of the page which reads: "By continuing past this page, you agree to our **Terms of Use**."  *Id*. ¶ 9 & Ex. C.  The words "**Terms of Use**" are bold and hyperlinked to the full text of the Terms of Use.  *Id*.; *see also id*. Exs. D & E (additional examples of interior pages on Ticketmaster's website containing this hyperlinked language).



- Second, before purchasing whatever tickets they selected, Plaintiffs were required

to sign into their account by inputting their user credentials and clicking a "Sign In" button, at which point they were again notified that: "By continuing past this page, you agree to our **Terms of Use**." *Id.* ¶¶ 14-15 & Ex. F.  As before, the words "**Terms of Use**" appeared in bold, contrasting color text, and hyperlinked to the full text of the Terms of Use.  *Id.*



- Third, once Plaintiffs signed into their respective accounts and were ready to purchase the tickets, they were required to fill out payment and billing information and click the "Place Order" button.  *Id.* ¶ 16 & Ex. H.  Immediately above that button was the following language: "By clicking 'Place Order', you agree to our **Terms of Use**." *Id.*  Again, as depicted below, the words "**Terms of Use**" appeared in bold, contrasting color text, and hyperlinked to the full text of the Terms.  *Id.*



Consequently, each time they created an account, logged into that account, and purchased tickets on www.ticketmaster.com, Plaintiffs agreed *repeatedly* to Ticketmaster's Terms of Use.

### 2.    *Plaintiff Lee's TicketExchangeByTicketmaster.com Purchases*

In order to purchase tickets on www.ticketexchangebyticketmaster.com (which Mr. Lee used in addition to www.ticketmaster.com), Mr. Lee was required to affirmatively agree to the "Terms and Conditions" for that site.  *See* Tobias Decl. ¶¶ 18-27.  He did that when he purchased the tickets, and/or when he created his account, as explained below.

Prior to April 7, 2016, all users of www.ticketexhangebyticketmaster.com were required to accept the Terms and Conditions at the time of purchase.  As a result, when Mr. Lee used that website to purchase tickets prior to that date, *see* Moon Decl. ¶¶ 8, 9(a)-(b), before he could place his order on the payment page, he was required to check a box next to a bright red disclaimer (depicted below), which read: "You must confirm that you have read and agree to the Terms & Conditions to place your order."  Tobias Decl. ¶ 23 & Ex. O.  That page included a hyperlink to the full text of those Terms.  *Id.*



After April 7, 2016, www.ticketexhangebyticketmaster.com changed its user interface, and from that point forward, all users were required to affirmatively accept the Terms and Conditions at the time they created their account.  Users thus could no longer use their old www.ticketexhangebyticketmaster.com accounts to purchase tickets.  Rather, from that point forward, users were required either to use Ticketmaster accounts created on ticketmaster.com as described above (where they were required to affirmatively agree to the Terms) or, if they did not have one, to create a new Ticketmaster account on the ticketexhangebyticketmaster.com site (where they were likewise required to affirmatively agree to the Terms).  Specifically, to create a Ticketmaster account on www.ticketexchangebyticketmaster.com during the period from April 7, 2016 to November 2018 (when Mr. Lee also made purchases, *see* Moon Decl. ¶ 9), a user was required to provide personal information (first and last name, email address, country of residence), create a password, and check a box affirming agreement to the "**Terms and Conditions**."  Tobias Decl. ¶ 20 & Ex. M.  As shown below, the words "**Terms and Conditions**" are in bold, contrasting color text, and are hyperlinked to the full text of those Terms.  *Id.*[3]



---

[3]   The Terms and Conditions are also hyperlinked and available for review on virtually every page on the www.ticketexchangebyticketmaster.com website.  *Id.* ¶¶ 26-27 & Exs. P-Q.

Consequently, Mr. Lee could not use www.ticketexchangebyticketmaster.com to purchase tickets without agreeing to the terms of use described below.  He either had to agree to the Terms and Conditions at the time of purchase (for pre-April 7, 2016 purchases), or had to agree when he created a Ticketmaster account (for all other purchases).

### 3.    The Terms of Use and Condition Contain a Broad Arbitration Clause and Class Action Waiver

Throughout the entire relevant time period in both complaints, the applicable Terms contained a provision by which Plaintiffs expressly agreed to submit their claims to binding arbitration, and waive any right to a jury trial or to participate in a class action.  Specifically, the www.ticketmaster.com Terms of Use provided that:

> Any dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us, will be resolved by binding arbitration rather than in court …

> The arbitration agreement in these Terms is governed by the Federal Arbitration Act (FAA), including its procedural provisions, in all respects. This means that the FAA governs, among other things, the interpretation and enforcement of this arbitration agreement and all of its provisions, including, without limitation, the class action waiver discussed below. State arbitration laws do not govern in any respect.

> This arbitration agreement is intended to be broadly interpreted, and will survive termination of these Terms.  The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. …

> The arbitration will be conducted by JAMS under its Streamlined Arbitration Rules and Procedures. …

> We each agree that the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.  **You agree to waive any right to a jury trial or to participate in a class action.**

*See* Tobias Decl. Ex. R (current www.ticketmaster.com Terms of Use); *id*. Exs. S-V (prior versions, containing substantially identical language).  The Terms and Conditions (which users using the legacy interface on www.ticketexchangebyticketmaster.com must agree to) likewise contain a substantially similar arbitration agreement and class action waiver, which directs that arbitration be conducted by JAMS pursuant to JAMS rules and procedures, and provides that the

arbitrator shall have exclusive authority to (*inter alia*) resolve any disputes related to the arbitration agreement. *See id.* ¶¶ 30-31 & Exs. X-Z (current and prior versions).

## III.    LEGAL STANDARD

Plaintiffs' claims against Ticketmaster are governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 2 (stating that the FAA applies to any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal"); Tobias Decl. Ex. R ("The arbitration agreement in these Terms is governed by the Federal Arbitration Act (FAA), including its procedural provisions, in all respects."). Under the FAA, an agreement to arbitrate, like the one in Ticketmaster's Terms, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This reflects Congress's intent to enforce agreements to arbitrate, and affirms the principle that federal law strongly favors arbitration. *See Allied-Bruce Terminix Cos., Inc., v. Dobson*, 513 U.S. 265, 270-71 (1995); *Concepcion*, 563 U.S. at 339 (reaffirming the "liberal federal policy favoring arbitration," and explaining that courts "must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms") (citations omitted); *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration.").

Pursuant to the FAA's strong policy favoring arbitration, the court's role is strictly circumscribed when ruling on a motion to compel arbitration. As the Ninth Circuit explained,

> By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). "The standard for demonstrating arbitrability is not high," and agreements to arbitrate

"are to be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). To that end, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Moreover, the court's inquiry is even "more limited" where (as here) the parties delegate the power to decide arbitrability to the arbitrator—rather than the court. *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying 9th Cir. law). In such cases, the court undertakes a limited inquiry into whether the parties "clearly and unmistakably" delegated the power to decide arbitrability to the arbitrator; if so, the court "must" stay the proceedings unless "the assertion of arbitrability is 'wholly groundless.'" *Id.* (citations omitted); *see also Nitsch v. DreamWorks Animation SKG, Inc.*, 100 F. Supp. 3d 851, 863-64 (N.D. Cal. 2015) (same; granting motion to compel arbitration); *Guidewire Software, Inc. v. Chookaszian*, No. 12-CV-03224, 2012 U.S. Dist. LEXIS 156363, at *8-9 (N.D. Cal. Oct. 31, 2012) (same).

## IV.   ARGUMENT

The FAA requires the Court to enforce the arbitration clauses at issue here because (1) there is a valid agreement to arbitrate, and (2) that agreement plainly encompasses the dispute at issue. Furthermore, to the extent there is any question about whether the claims here are arbitrable, that question must be decided by the arbitrator, because the arbitration clauses at issue clearly and unmistakably delegate the power to decide arbitrability to the arbitrator.

### A.   Ticketmaster's Terms of Use and Conditions Constitute a Valid, Enforceable Agreement

Ticketmaster's Terms constitute enforceable "clickwrap" or "modified clickwrap" agreements—i.e., online agreements that are accepted by clicking a hyperlinked button denoting acceptance. A "clickwrap" agreement "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon." *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 U.S. Dist. LEXIS 156658, at *6-7 (S.D. Cal. Nov. 5, 2014) (citation omitted). A "modified" clickwrap agreement presents a terms of use agreement as part of some other transaction, so that clicking a hyperlinked button both completes a transaction *and* denotes acceptance of any terms of use. *See id.* at *8; *see*

*also Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011).

Courts in this circuit routinely enforce clickwrap and "modified" clickwrap agreements. *See, e.g.*, *U.S. v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) ("Clickwrap agreements 'have been routinely upheld by circuit and district courts.'").  For example, in *Swift* v. *Zynga Game Network*, the plaintiff clicked on an "Accept" button; that button was placed above a statement which indicated that clicking on the button constituted assent to the terms of service, and provided a hyperlink to the terms of service.  805 F. Supp. 2d at 911.  The court explained that cases involving such "modified clickwrap presentations," "where a plaintiff was provided notice and an opportunity to review terms of service prior to acceptance, have held them sufficient to put a plaintiff on notice of the terms to which she was assenting." *Id*. at 911-12 (collecting cases).  The court likewise held that the modified clickwrap agreement at issue was binding and enforceable— and thus granted the motion to compel arbitration—because "Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept.'" *Id*. at 912.

Other courts presented with similar facts consistently reach the same conclusion. *See, e.g.*, *DeVries v. Experian Info. Sols., Inc.*, No. 16 Civ 02953, 2017 U.S. Dist. LEXIS 26471, at *12-18 (N.D. Cal. Feb. 24, 2017) (enforcing arbitration clause where notice above "Submit Secure Order" button informed customers that, by submitting an order, they agreed to the terms); *Moule v. UPS*, No. 1:16-cv-00102, 2016 U.S. Dist. LEXIS 88270, at *13-14 (E.D. Cal. July 7, 2016) (enforcing arbitration clause in terms and conditions where the user had to click a "Yes" button, which was below the following, hyperlinked statement: "By clicking the Yes button, you agree to the UPS Tariff/Terms and Conditions."); *Rodriguez v. Experian Servs. Corp.*, No. CV 15-3553-R, 2015 U.S. Dist. LEXIS 187273, at *6 (C.D. Cal. Oct. 5, 2015) (enforcing arbitration clause in terms of use where the "website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgement, which stated: 'By clicking the button above ... you agree to our Terms of Use.'").[4]

---

[4]   *See also Crawford*, 2014 U.S. Dist. LEXIS 156658, at *2-3, *6-9 (enforcing terms and conditions where the "Place Order" button was placed directly below the following hyperlinked

Here—as in *DeVries*, *Swift*, *Moule*, and countless other cases—Plaintiffs were required to assent to the applicable Terms.   Indeed, it is impossible for a user to purchase tickets from a Ticketmaster site without agreeing to those Terms.   As explained above, Ticketmaster's websites require users to agree to the applicable Terms before they can create an account and place an order, and those Terms are always identified in bright, contrasting color, and are hyperlinked and available for review on virtually every page on the websites.   *See supra* Section II.C; Tobias Decl. ¶¶ 6-27.   *Compare Graf v. Match.com, LLC*, No. CV 15-3911, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (enforcing arbitration clause in terms of use where "all users of the Match.com website … were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review").   The law is clear that this provided Plaintiffs with sufficient notice and opportunity to review the Terms, and that, by clicking on the button (e.g., "Sign Up" or "Create Account"), Plaintiff "manifested assent" to those Terms.   *See Moule*, 2016 U.S. Dist. LEXIS 88270, at *13-14.   The Terms thus constitutes an enforceable agreement.

Indeed, the exact Ticketmaster Terms at issue here have been held enforceable on numerous occasions.   In *Nevarez v. Forty Niners Football*, a court in this district found that the plaintiff had accepted Ticketmaster's Terms of Use by clicking the buttons described above, and emphasized that "courts have 'consistently enforced' arbitration clauses contained within terms of use on similarly designed websites."   2017 U.S. Dist. LEXIS 131208, at *22-26.   Other courts have reached the same conclusion.   *See, e.g.*, *Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*, No. 12-CV-6125, 2014 U.S. Dist. LEXIS 100250, at *6-8 (W.D. Ark. July 23, 2014)

---

sentence: "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions."); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 723-24 (E.D.N.Y. 2017) (enforcing arbitration agreement and collecting cases where courts "have upheld 'Sign-In Wrap' agreements where plaintiffs … clicked a 'Sign Up' or 'Sign In' button where nearby language informed them that clicking the buttons would constitute accepting the terms of service."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 841 (S.D.N.Y. 2012) (enforcing terms of service where, right below the "Sign Up" button, the following was displayed: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service.").

MOTION TO COMPEL ARBITRATION
                                                                      CASE NOS. 3:18-cv-05987-VC, 3:18-cv-06750-VC

(granting motion to compel arbitration on grounds that "'clickwrap agreements' like [Ticketmaster's] are routinely upheld as valid and enforceable," and that plaintiff had assented to Ticketmaster's Terms of Use when she registered her account and purchased tickets); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) (holding that "Ticketmaster's Terms of Use are sufficiently conspicuous to be binding on the plaintiff as a matter of law.").[5]

### B.  The Arbitration Clause Plainly Encompasses the Dispute at Issue Here

The arbitration clause in the www.ticketmaster.com Terms broadly encompasses "[a]ny dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us."  Tobias Decl. Ex. R; *see also id*. Exs. S-V.  Likewise, the arbitration clause in the www.ticketexchangebyticketmaster.com Terms broadly encompass "all disputes and claims between us," including "without limitation, claims relating to … your purchase of tickets."  *Id*. Ex. W; *see also id*. Exs. X-Z.

Plaintiffs' claims unquestionably arise out of their purchase of tickets from Ticketmaster's websites, and therefore fall squarely within the arbitration clauses.  Mr. Ameri alleges that Ticketmaster engaged in conduct that inflates ticket prices, *Ameri* Compl. ¶ 1, and that, as result, he and his fellow putative class members have "suffered harm that includes but is not limited to the increased price paid for event tickets," *id*. ¶ 63.  Mr. Lee similarly alleges that Ticketmaster engaged in conduct that "facilitated the sale of tickets to the secondary market," where consumers "typically pay more … for the tickets themselves," *Lee* Compl. ¶¶ 3, 5, and Mr. Lee "seeks restitution of money paid to Ticketmaster for secondary market sales" on behalf of a putative class of consumers who similarly purchased secondary tickets from Ticketmaster, *id*. ¶ 6.  These claims plainly relate to "products or services sold or distributed by [Ticketmaster] or through [Ticketmaster]," within the meaning of the ticketmaster.com Terms of Use.  Tobias Decl. Ex. R.  They also plainly relate to Plaintiffs' "purchase of tickets," and "any fees or other amounts

---

[5]  Courts have also found that the notice on the homepage, which states that anyone who proceeds past that page accepts the terms of use (often referred to as a "browsewrap" agreement) binds users.  *See Ticketmaster LLC. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (finding Ticketmaster "highly likely to succeed in showing that Defendant received notice of the Terms of Use and assented to them by actually using the website" because homepage stated: "Use of this website is subject to express Terms of Use"); *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 997654, 2003 U.S. Dist. LEXIS 6483, at *7-10 (C.D. Cal. Mar. 7, 2003).

[Plaintiffs] paid … in connection with the purchase of tickets," within the meaning of the ticketexchangebyticketmaster.com Terms and Conditions.  *Id.* Ex. W.

Plaintiffs' claims therefore easily satisfy the test set forth by the Ninth Circuit because (1) "a valid agreement to arbitrate exists," and (2) that "agreement encompasses the dispute at issue"; therefore, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  *Chiron*, 207 F.3d at 1130.  The Court "may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration."  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). Here, as in many other cases, dismissal is the most efficient path forward.  *See, e.g.*, *Peterson v. Lyft*, No. 16-cv-07343, 2018 WL 6047085, at *6 (Nov. 19, 2018) (granting motion to compel arbitration and dismissing case); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015) (same); *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256, 2014 WL 1615177, at *11 (N.D. Cal. Apr. 21, 2014) (same); *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1126 (N.D. Cal. 2014) (same); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (same).

### C.    To the Extent There Is a Dispute About Arbitrability, That Question Must Be Submitted to the Arbitrator

Even if there were any doubt as to whether there is a valid agreement to arbitrate or whether that agreement covers the dispute, the Court would still be required to enforce the arbitration clause and dismiss or stay these cases.  Where (as here) the parties delegated the question of arbitrability to the arbitrator, the court *must* send the determination of these "gateway" questions to the arbitrator so long as the delegation is "clear and unmistakable" and the assertion of arbitrability is not "wholly groundless."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Peterson*, 2018 WL 6047085, at *2.  "If a court finds that the assertion of arbitrability is even loosely related to the claims, 'it should stay the action pending a ruling on arbitrability by the arbitrator.'" *Khraibut v. Chahal*, No. C15-04463, 2016 WL 1070662, at *7 (N.D. Cal. Mar. 18, 2016).

Here, the parties "clearly and unmistakably" delegated that power to the arbitrator.  The arbitration clauses specify that "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of

or relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or part of this Agreement is void or voidable." *See* Tobias Decl. Ex. R (current www.ticketmaster.com Terms of Use); *id*. Exs. T-W (prior versions, identical language); *id*. Exs. W-Z (current and prior www.ticketexchangebyticketmaster.com Terms and Conditions, nearly identical language).

Courts routinely find that such language is "clear and unmistakable." *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (language in arbitration clause stating that "arbitrators [had] the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision' … 'clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability'"); *Tuminello v. Richards*, 504 F. App'x 557, 558 (9th Cir. 2013) (language in arbitration clause stating that arbitrator "shall decide 'any and all controversies ... concerning any account(s), transaction, dispute or the construction, performance, or breach of this or any other Agreement' … provides clear and unmistakable evidence that the parties intended the question of arbitrability to be decided in arbitration"); *Momot* v. *Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011) (language in arbitration clause stating that arbitrator had the authority to determine the "validity or application of any of the provisions" of the arbitration clause was "clear and unmistakable"); *Chung v. Nemer*, No. C 12-4608, 2012 WL 5289414, at *1 (N.D. Cal. Oct. 25, 2012) (finding "that the arbitration agreement was clear in stating that '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement,'" and therefore "plaintiff clearly and unmistakably agreed to arbitrate all disputes related to the agreement").

In addition to the above language, the Terms also specify that arbitration "will be conducted by JAMS under its Streamlined Arbitration Rules and Procedures or, if applicable, its Comprehensive Arbitration Rules and Procedures." *See* Tobias Decl. Ex. R (current Terms of Use); *id*. Exs. S-V (prior versions, identical language); *id*. Ex. W-Z (current and prior versions of Terms and Conditions for www.ticketexchangebyticketmaster.com, containing nearly identical language). JAMS Rule 8 specifies that "[j]urisdictional and *arbitrability disputes*, including

disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought … *shall be submitted to and ruled on by the Arbitrator*. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." T. O'Mara Decl. in Supp. of Motion to Compel Arb., Ex. A (JAMS Streamlined Arbitration Rules & Procedures) (emphasis added). This constitutes further "clear and unmistakable" evidence that the parties intended the arbitrator to determine the threshold question of arbitrability. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. 2017) (enforcing arbitration agreement between consumer and Uber where agreement incorporated AAA rules); *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036, 2017 WL 4551484, at *2-3 (N.D. Cal. Oct. 11, 2017) (enforcing arbitration agreement between consumers and Fitbit where agreement incorporated AAA rules); *Johnson v. Oracle Am., Inc.*, No. 17-cv-05157, 2017 WL 8793341, at *6-7 (N.D. Cal. Nov. 17, 2017) (enforcing arbitration agreement between employee and employer where agreement incorporated AAA and JAMS rules; finding no distinction between incorporation of AAA rules and incorporation of JAMS rules for purposes of assessing intent to arbitrate).

Consequently, the parties "clearly and unmistakably intend[ed] to delegate the power to decide arbitrability to an arbitrator"; as a result, the Court's inquiry is "limited … [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm*, 466 F.3d at 1371; *see also Nitsch*, 100 F. Supp. 3d at 863-64 (same). Here, the assertion of arbitrability plainly is not remotely groundless. As discussed above, Plaintiffs' claims unquestionably arise out of their purchases of tickets from Ticketmaster's websites, and therefore fall squarely within the arbitration clauses. *See supra* Section II.A. As such, the assertion of arbitration clearly is not "wholly groundless," and the case must therefore, at the very least, be stayed. *See Nitsch*, 100 F. Supp. 3d at 864 (finding that, where there was at least a "colorable argument" that the claims fell within the scope of the arbitration clause, the assertion of arbitrability was not wholly groundless, and granting motion to compel arbitration); *Guidewire*, 2012 U.S. Dist. LEXIS 156363, at *12-13.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel individual arbitration and dismiss or, in the alternative, stay these actions.

Dated: November 30, 2018                    Respectfully submitted,

                                            By: _____
                                                Timothy L. O'Mara
                                                LATHAM & *WATKINS* LLP

                                                *Attorneys for Defendants Ticketmaster*
                                                *LLC and Live Nation Entertainment, Inc.*