Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave, Suite 2000
Seattle, WA 98101
(206) 623-7292
*steve@hbsslaw.com*

Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150
*elaine@hbsslaw.com*

*Attorneys for Plaintiff Allen Lee and the Proposed Class*

Randall B. Aiman-Smith (SBN 124599)
Hallie Von Rock (SBN 233152)
AIMAN-SMITH & MARCY
7677 Oakport St. Suite 1150
Oakland, CA 94621
(510) 817-2711
*ras@asmlawyers.com*

*Attorneys for Plaintiff Mahmoud Ameri and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLEN LEE, on behalf of himself and all others similarly situated,<br><br>                                 Plaintiff,<br><br>    v.<br><br>TICKETMASTER L.L.C., a Virginia corporation, LIVE NATION ENTERTAINMENT, INC., a Delaware corporation,<br><br>                                Defendants.<hr>MAHMOUD AMERI, on behalf of himself and all others similarly situated, | Case Nos. 18-cv-5987-VC & 18-cv-6750-VC<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: Jan. 31, 2019<br>Time: 10:00 am<br>Place: Courtroom 4<br>Judge: Hon. Vince Chhabria |

Plaintiff,

v.

TICKETMASTER LLC, and DOES 1-10,
inclusive,

Defendants.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      Plaintiff Lee did not agree to arbitrate purchases from Ticket Exchange...................2

        A.      Ticketmaster cannot meet its burden to establish that a valid
                agreement to arbitrate exists encompassing the dispute at issue. ...................2

        B.      Plaintiff Lee did not assent to arbitration regarding ticket purchases
                on Ticket Exchange, accessed via his ticketmaster.com account. ...................3

        C.      Plaintiff Lee did not assent to arbitration regarding ticket purchases
                on Ticket Exchange, accessed via his
                ticketexchangebyticketmaster.com account..................................................6

II.     Plaintiff Lee did not agree to arbitrate purchases from Ticketmaster Verified. .......8

III.    Plaintiffs Ameri and Lee's purported arbitration agreements are unenforceable. ....9

        A.      The arbitration provisions are unconscionable and therefore
                unenforceable...............................................................................................9

                1.      The arbitration provisions are procedurally unconscionable
                        contracts of adhesion foisted on consumers on a take-it-or-
                        leave-it basis......................................................................................9

                2.      The arbitration provisions are also substantively
                        unconscionable.................................................................................10

                3.      The arbitration provisions are permeated with
                        unconscionability. ............................................................................13

        B.      The Court should decide the enforceability of the unconscionable
                provisions...................................................................................................13

                1.      The Ticketmaster arbitration provision does not clearly and
                        unmistakably delegate arbitrability to the arbitrator and is
                        unconscionable.................................................................................13

                2.      The Ticket Exchange arbitration provision does not clearly
                        and unmistakably delegate arbitrability to the arbitrator. ................15

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Comcast Corp.*,
No. 16-cv-5969-VC, 2018 WL 4846548 (N.D. Cal. Feb 15, 2018) ...................12

*Aguirre v. Vivint Solar Developer, LLC*,
No. 17-cv-1197-JLT, 2018 WL 1709972 (E.D. Cal. Apr. 9, 2018) ...................11

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012) ...............................................................11, 14, 15

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................................12

*Armendariz v. Found. Health Psychcare Serv's Inc.*,
24 Cal. 4th 83 (2000) ............................................................................9, 10, 13

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011).........................................................................................9

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).........................................................................................2, 13

*Baker v. Osborne Dev. Corp.*,
159 Cal. App. 4th 884 (2008) ............................................................................15

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...................................................................3

*Chand v. Checksmart Fin. LLC*,
No. 17-cv-3895-JSC, 2017 WL 3605221 (N.D. Cal. Aug. 22, 2017) .................10

*Cisneros v. Am. Gen. Fin. Servs.*,
No. 11-cv-2869-CRB, 2012 WL 3025913 (N.D. Cal. July 24, 2012)..................10

*Cullinane v. Uber Tech., Inc.*,
893 F.3d 53 (1st Cir. 2018)..................................................................................6

*Daniel v. eBay, Inc.*,
319 F. Supp. 3d 505 (D.D.C. 2018)......................................................................4

*Devries v. Experian Info. Sols., Inc.*,
No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ................6

*Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*,
    495 F.3d 1062 (9th Cir. 2007) .......................................................................................8

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007)...........................................................................8

*Egan v. Live Nation Worldwide, Inc.*,
    No. 2:17-cv-445, 2018 WL 1281860 (W.D. Pa. Mar. 12, 2018) ..................................2

*Ferguson v. Countrywide Credit Indus.*,
    298 F.3d 778 (9th Cir. 2002) .......................................................................................11

*Fitz v. NCR Corp.*,
    118 Cal. App. 4th 702 (2004) ......................................................................................11

*Goza v. Multi-Purpose Civic Ctr. Facilities Bd.*,
    12-cv-6125, 2014 WL 3672128 (W.D. Ark. July 23, 2014)..........................................8

*Hermosillo v. Davey Tree Surgery Co.*,
    No. 18-cv-393-LHK, 2018 WL 3417505 (N.D. Cal. July 13, 2018)..............................10

*Lang v. Skytap, Inc.*,
    No. 18-cv-1292-KAW, 2018 WL 5304842 (N.D. Cal. Oct. 24, 2018) ...................12, 15

*Lopez v. Terra's Kitchen, LLC*,
    331 F. Supp. 3d 1092 (S.D. Cal. 2018).........................................................................3

*Lovig v. Best Buy Stores*,
    18-cv-2807-PJH, 2018 U.S. Dist. LEXIS 146473 (N.D. Cal. Aug. 28, 2018) ...................10

*McArdle v. AT&T Mobility LLC*,
    No. 09-cv-1117-CW, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017) ...................13

*McGill v. Citibank*,
    2 Cal. 5th 945 (2017) ...........................................................................................12, 13

*Metter v. Uber Tech., Inc.*,
    No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017)...............................2

*Meyer v. Uber Tech., Inc.*,
    868 F.3d 66 (2d Cir. 2017)........................................................................................2, 5

*Moule v. United Parcel Service Co.*,
    16-cv-105-JLY, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ..........................................4

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) .................................................................................10, 13

*Nevarez v. Forty Niners Football Co., Inc.*,
    No. 16-cv-07013-KHL, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017)...............2, 5, 7, 8

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ..............................................................................2, 3, 8

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016).......................................................................................5, 6

*Norcia v. Samsung Telecomm. Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) .........................................................................................2

*Parada v. Super. Ct.*,
  176 Cal. App .4th 1554 (2009) ......................................................................................15

*Patterson v. ITT Consumer Fin. Corp.*,
  14 Cal. App. 4th 1659 (1993) ..........................................................................................9

*Perez v. DirectTV Grp.*,
  251 F. Supp. 3d 1328 (C.D. Cal. 2017) ...................................................................10, 11

*Plazza v. Airbnb, Inc.*,
  289 F. Supp. 3d 537 (S.D.N.Y. 2018)...............................................................................4

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) ...............................................................................9, 10, 11

*Roberts v. AT&T Mobility LLC*,
  No. 15-cv-3418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) ...........................13

*Rodman v. Safeway, Inc.*,
  11-cv-3003-JST, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015) .....................................4, 8

*Rodman v. Safeway, Inc.*,
  694 F. App'x 612 (9th Cir. 2017) .....................................................................................4

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ...................................................................................................11

*Saravia v. Dynamex, Inc.*,
  310 F.R.D. 412 (N.D. Cal. 2015).....................................................................................14

*Serafin v. Balco Props. Ltd., LLC*,
  235 Cal. App. 4th 165 (2015) .........................................................................................12

*Smith v. VMware, Inc.*,
  No. 15-cv-3750-TEH, 2016 WL 54120 (N.D. Cal. Jan. 5, 2016).....................................12

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th 1109 (2013) ..............................................................................................9, 10

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ..................................................................................11, 12

*Vargas v. Delivery Outsourcing, LLC*,
     No. 15-cv-3408-JST, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ................................................... 14

**Statutes**

9 U.S.C. § 2 ............................................................................................................................................. 9

Cal. Code Civ. § 1670.5(a) ...................................................................................................................... 13

Cal. Code of Civ. Proc § 1864 ................................................................................................................ 14

**Other Authorities**

Restatement (Second) of Contracts § 206 (1981) ................................................................................... 14

**INTRODUCTION**

Earlier this year undercover journalists from Canada's national broadcaster exposed Ticketmaster's scheme to facilitate the resale of its tickets by scalpers in order to take a second cut from consumers on the secondary market.  Two of these consumers—Allen Lee and Mahmoud Ameri—sued Ticketmaster to recover the inflated prices they have paid for tickets.  Ticketmaster moved to compel arbitration.  The motion should be denied for two main reasons.

First, plaintiff Lee never agreed to arbitration with Ticketmaster.  Plaintiff Lee was first notified of Ticketmaster's terms of use long before it had an arbitration provision—which Ticketmaster fails to mention in its motion.  And Ticketmaster introduces no evidence to show that it ever notified plaintiff Lee that it had introduced new terms.  Terms cannot be unilaterally amended without notice.  And it is impractical to expect consumers to spend time inspecting a contract they have no reason to believe has changed—especially when the other party is aware of any changes it has made and is the one wishing them to govern.  So online retailers must provide notice that terms have been changed (beyond writing the word "updated" on the actual terms themselves).  But Ticketmaster introduces no evidence that it has done so, and thus fails to meet its burden of establishing an agreement to arbitrate with plaintiff Lee.

Second, Ticketmaster's arbitration agreements are unconscionable.  They are procedurally unconscionable contracts of adhesion foisted on consumers on a take-it-or-leave-it basis.  And they are also permeated with substantively unconscionable terms.  From the arbitration agreement Ticketmaster carves out all claims relating to its broadly worded conditional license to view its site—reserving for itself the ability to litigate claims against consumers and others in court, while requiring consumers to arbitrate their claims.  This non-mutuality is the paradigmatic form of substantive unconscionability under California law.  Likewise, Ticketmaster's arbitration provision lacks mutuality and is unconscionable because it precludes consumers, but not Ticketmaster, from recovering attorney's fees—even if consumers are entitled to such fees by statute.  And, finally, the provisions are substantively unconscionable because they preclude consumers from seeking public injunctive relief in any forum.

Defendants' motion should be denied in its entirety.

## ARGUMENT

I.    **Plaintiff Lee did not agree to arbitrate purchases from Ticket Exchange.**

    A.    **Ticketmaster cannot meet its burden to establish that a valid agreement to arbitrate exists encompassing the dispute at issue.**

"As the party seeking to compel arbitration," Ticketmaster "bears the burden of proving the existence of an agreement to arbitrate by the preponderance of the evidence."[1]  But contrary to Ticketmaster's argument neither a valid agreement to arbitrate exists nor does the purported agreement encompass the dispute at issue.[2]  And because any argument to the contrary is wholly groundless, the inquiries here are reserved to the court.[3]  Moreover, where the parties raise "a genuine issue of fact as to whether an agreement to arbitrate was formed, it is not necessary to resolve" whether the "terms of service validly delegate to an arbitrator any question of arbitrability."[4]  To be sure, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[5]

Under California law, "mutual assent is the key to contract formation."[6]  And, "[i]n the context of an electronic consumer transaction, the occurrence of mutual assent ordinarily, as here, turns on whether the consumer had reasonable notice of a merchant's terms of service agreement."[7]  And reasonable notice depends on "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design."[8]

---

[1] *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).  Internal quotations and citations omitted and emphasis added unless otherwise indicated.

[2] Mot. at 8-9.  All "Mot." references are to Defendants' Motion to Compel Arbitration, ECF 25.

[3] Mot. at 13.

[4] *Metter v. Uber Tech., Inc.*, No. 16-cv-06652-RS, 2017 WL 1374579, at *3 n.3 (N.D. Cal. Apr. 17, 2017); *see also Egan v. Live Nation Worldwide, Inc.*, No. 2:17-cv-445, 2018 WL 1281860, at *6 (W.D. Pa. Mar. 12, 2018).

[5] *Nevarez v. Forty Niners Football Co., Inc.*, No. 16-cv-07013-KHL, 2017 WL 3492110, at *5 (N.D. Cal. Aug. 15, 2017), *quoting AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

[6] *Metter*, 2017 WL 1374579, at *2.

[7] *Id.*; *see also Egan*, 2018 WL 1281860, at *4 (questioning whether a reasonable consumer "was agreeing to forever arbitrate any dispute" with the defendant).

[8] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see also Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("California law is clear" that an offeree "is not bound by inconspicuous contractual provisions").

In *Nguyen*, the Ninth Circuit described the spectrum between clickwrap agreements (where a consumers must affirmatively click a box agreeing to arbitration terms) and browsewrap agreements (where a hyperlink to terms appears at the bottom of the page and purports to bind consumers simply by using the site).[9]  Hybrid or modified agreements (where notices that creating an account, signing-in, or completing a purchase will constitute agreement to terms of use) are enforceable depending on their conspicuousness.[10]

Plaintiff Lee alleges there are three resale sites from which consumers purchased secondary tickets from Ticketmaster:  Ticket Exchange, which provides "fan-to-fan resale"; TicketsNow; and Ticketmaster Verified.[11]  Plaintiff Lee alleges purchases from the first: ticketchangebyticketmaster.com from 2016 through 2018,[12] which tickets he purchased by signing into a ticketmaster.com account or a ticketexchangebyticketmaster.com account.[13]

### B.    Plaintiff Lee did not assent to arbitration regarding ticket purchases on Ticket Exchange, accessed via his ticketmaster.com account.

Ticketmaster states that the ticketmaster.com account set-up page "has required users to agree to the Terms of Use since at least 2003,"[14] and the Terms of Use have included an arbitration provision since 2011.[15]  But in its multiple declarations Ticketmaster does not state when plaintiff Lee created his account, though presumably Ticketmaster knows.  In fact, plaintiff Lee created his account about 25 years ago[16]—well before Ticketmaster included an arbitration provision in its terms of use at account formation.  So while Ticketmaster relies on cases for the proposition that modified clickwrap agreements may put consumers on notice of arbitration terms, Ticketmaster

---

[9] 763 F.3d at 1175-76, 1179.

[10] *Lopez v. Terra's Kitchen, LLC,* 331 F. Supp. 3d 1092, 1098 (S.D. Cal. 2018).  Some courts refer to these as sign-in-wrap agreements.  *E.g., Berkson v. Gogo LLC,* 97 F. Supp. 3d 359, 394-95 (E.D.N.Y. 2015).

[11] *Lee* Complaint, No. 18-cv-5987, ECF 1, ¶ 31 n.24.  Further references will be to "*Lee,* ¶ __".

[12] *Lee,* ¶ 7; Declaration of Shawn Moon in Support of Defendants' Motion to Compel Arbitration ("Moon Decl."), No. 18-cv-5987, ECF 27, at ¶¶ 8-9.

[13] Mot. at 6.

[14] Declaration of Kimberly Tobias in Support of Defendants' Motion to Compel Arbitration ("Tobias Decl."), No. 18-cv-5987, ECF 26, at ¶ 8.

[15] *Id.*, at ¶ 29.

[16] Declaration of Allen Lee in Support of Plaintiffs' Joint Opposition to Defendants' Motion to Compel Arbitration ("Lee Decl."), at ¶ 3.

does not provide evidence that it notified plaintiff Lee that his terms had changed.[17]

Indeed, by failing to acknowledge that plaintiff Lee created his account before Ticketmaster included an arbitration provision in its terms at account formation, Ticketmaster has squandered the opportunity to explain what efforts—if any—it took to advise consumers who created their accounts prior to 2011 of the changes to the terms from those implemented in 2003. As the Ninth Circuit held in *Rodman v. Safeway,* the "district court correctly determined" that, even with a modification clause, the defendant online merchant could not "unilaterally amend the Special Terms without notice."[18]

As Judge Tigar put it, "beyond the impracticality of expecting consumers to spend time inspecting a contract they have no reason to believe has been changed, the imposition of such an onerous requirement on consumers would be particularly lopsided," as the defendant "is aware that it has—or has not—made changes to the Terms and is the party to the contract that wishes for the new terms to govern."[19] And the court described "any number of actions" an online retailer can take "to make sure customers are aware of changes":

> After making a change, Safeway can take any number of actions to alert users that the Special Terms they agreed to at registration have been altered. For instance, Safeway could ask customers to click to indicate that they agree to the ***new*** Special Terms or send all existing Safeway.com customers an email in order to ensure that every customer is aware of a ***change*** in the Special Terms prior to making a purchase. When Safeway changed the Special Terms on November 15, 2011, it opted to do neither.[20]

Similarly, in *Daniel v. eBay, Inc.*, the district court denied a motion to compel arbitration where the plaintiff "accepted a contract that did not contain an arbitration provision thirteen years earlier" and eBay failed to show that "it undertook specific efforts to send notice of the new arbitration provisions."[21] Likewise here.

---

[17] *See* Mot. at 9-12 (collecting cases); *cf. Moule v. United Parcel Service Co.*, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) (when terms amended, users directed to an update screen notifying them that a "new section" now provided for binding arbitration of claims).

[18] 694 F. App'x 612, 613 (9th Cir. 2017).

[19] *Rodman v. Safeway, Inc.*, 2015 WL 604985, at *11 (N.D. Cal. Feb. 12, 2015).

[20] *Id., aff'd* 694 F. App'x 612.

[21] 319 F. Supp. 3d 505, 512-13 (D.D.C. 2018); *cf. Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537,

Besides the fact that consumers would have no reason to know that the account terms had changed and thus no reason to review them again, Ticketmaster's sign-in page would offer insufficiently conspicuous notice even if the terms had not changed. Unlike the sign-in pages for Ticket Exchange and TicketsNow, where a directly adjacent and preceding statement advises the consumer that by continuing past the page one agrees to the terms, on Ticketmaster.com the big, bright-blue sign-in button is followed by two lines of text that are larger and more colorful than the small, pale gray purported notice language that follows:[22]

TicketsNow.com:                          Ticketmaster.com:



There is no reason for someone signing-in to read past another two lines of text about forgotten passwords and creating new accounts to a third line about the terms and conditions applying to those continuing past the page.[23] It simply is not conspicuous.

The Second Circuit recently held in *Nicosia v. Amazon.com, Inc.*, that Amazon "failed to show that [the plaintiff] was on notice and agreed to mandatory arbitration" where nothing about the "button alone suggests that additional terms apply," and "the presentation of terms is not directly adjacent" so as "to indicate that a user should construe clicking at acceptance."[24] In addition, the

---

549-50 (S.D.N.Y. 2018) (compelling arbitration where defendant notified users of "updated terms of service" both when accessing its website and via email).

[22] *Compare* Declaration of Steve W. Berman in Support of Plaintiffs' Joint Opposition to Defendants' Motion to Compel Arbitration ("Berman Decl."), Ex. 1, *with id.* Ex. 2; *see also* Tobias Decl., Ex. F (same as Berman Decl., Ex. 2).

[23] The Ticketmaster sign-in screen depicted in *Nevarez* was different. 2017 WL 3492110, at *2.

[24] 834 F.3d 220, 236-38 (2d Cir. 2016); *cf Meyer*, 868 F.3d at 78 (notice of terms and conditions was reasonably conspicuous where "directly adjacent" to the button intended to manifest assent to

message itself was "not bold, capitalized, or conspicuous in light of the whole webpage" as there were "numerous other links on the webpage, in several different colors, fonts, and locations, which generally obscure[d] the message."[25]  Again, the same here.

The purchase page is worse still.  Unlike the purchase page when using ticketmaster.com to buy tickets from that site—where there is a message above the green "place order" button stating that by doing so one agrees to the terms of use—the purchase page when using a Ticketmaster account to access tickets on ticketexchangebyticketmaster.com includes no such notice.[26]  The purchase page on ticketexchangebyticketmaster.com previously included such notice prior to April 7, 2016, but has not since that date.[27]  And Ticketmaster acknowledges as much.[28]  Plaintiff Lee alleges purchases since that date.[29]  In short, no agreement to arbitrate exists as to these purchases.

### C.    Plaintiff Lee did not assent to arbitration regarding ticket purchases on Ticket Exchange, accessed via his ticketexchangebyticketmaster.com account.

Ticketmaster states that since April 7, 2016, "users were required either to use Ticketmaster accounts created on ticketmaster.com … or, if they did not have one, to create a new Ticketmaster account on the ticketexchangebyticketmaster.com site."[30]  Because plaintiff Lee already had an account created on ticketmaster.com,[31] he presumably has not created a ticketexchangebyticketmaster.com since April of 2016.  And this is consistent with his recollection of having created his ticketexchangebyticketmaster.com account about 10 years ago.[32]

In any event, even assuming for the sake of argument that he has created an account on

---

the terms); *Devries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *6 (N.D. Cal. Feb. 24, 2017) (same).

[25] *Nicosia*, 834 F.3d at 236-38; *see also Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 63-64 (1st Cir. 2018) (denying motion to compel arbitration: "Even though the hyperlink did possess some of the characteristics that make a term conspicuous, the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the user's attention.").

[26] *Compare* Tobias Decl., Ex. H, *with* Berman Decl., Ex. 3.

[27] Tobias Decl., at ¶ 23.

[28] Mot. at 6.

[29] Moon Decl., at ¶ 9.  Plaintiff Lee also made two purchases in April 2016 prior to the 7th of that month.  *Id.*  But, again, the notice did not alert him that the terms had changed.

[30] Mot. at 6.

[31] Lee Decl., at ¶ 3.

[32] *Id.* at ¶ 4.

ticketexchangebyticketmaster.com since April 7, 2016, the terms on that site (1) refer to an arbitration agreement with TicketsNow, another Ticketmaster company; (2) cover claims arising from purchases on TicketsNow.com; and (3) specifically state that ticket purchasers are to file suit in federal court.  Such terms do not provide unambiguous notice that consumers are waiving their right to a jury trial on a classwide basis—and thus there is no mutual assent to arbitration.

In its motion, Ticketmaster quotes at length from the ticketmaster.com agreement and simply indicates that the ticketexchangebyticketmaster.com agreement is "substantially similar."[33] It is not.  The Ticket Exchange agreement states that "TicketNow.com ('TicketsNow') and you agree to arbitrate all disputes and claims between us."[34]  And though TicketsNow is later defined to include its affiliates, the covered claims are confusingly stated to include, but not be limited to:

> claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, ***including, without limitation claims relating to your use of TicketNow's website www.TicketsNow.com (the "Website")***, any statements or advertising on the Website, your purchase of tickets through the Website, any fees or other amounts you paid to TicketsNow in connections with the purchase of tickets through the Website, and/or the delivery of tickets to you that you purchased through the Website….[35]

Ticket Exchange is not mentioned once in the agreement.[36]  The agreement also goes on to state that "[t]o the extent there is no federal law applicable to the dispute,"[37] which there is not,[38] "the parties agree if you have a dispute and your dispute involves an event (or a ticket for an event) that is located in the United States, then you consent to personal jurisdiction, and agree to bring all actions, *exclusively in a state or federal court* located in Chicago, Illinois."[39]  This agreement does not put reasonable consumers on notice that they are waiving the right to a jury trial of class claims for a dispute involving a ticket for an event, especially for one purchased on Ticket Exchange.[40]

---

[33] Mot. at 7-8, *citing* Tobias Decl., Exs. X-Z.

[34] Tobias Decl., Exs. W at 9, X at 9, Y at 10, Z at 9.

[35] *Id.*, Exs. W at 9, X at 9, Y at 10, Z at 9 (underlined emphasis in original).

[36] *Id.*

[37] *Id.*, Exs. W at 9, X at 10, Y at 10, Z at 10.

[38] The UCL unlawful prong claim in *Lee* relies on the BOTS Act for the predicate law violation but that federal statute does not provide for private enforcement.  ¶ 59.

[39] Tobias Decl., Exs. W at 9, X at 10, Y at 10, Z at 10.

[40] *Nevarez*, 2017 WL 3492110, at *6 (agreement to arbitrate must be express and unequivocal).

Thus, while Ticketmaster correctly argues that click-wrap agreements may put consumers on notice of arbitration terms, here the terms themselves fail to establish mutual assent to arbitrate.[41] Likewise, notice of the same terms provided at sign-in fail for the same reason—as do terms posted at the bottom of each page (and, in any event, the Ninth Circuit generally considers such pure browsewrap provisions themselves insufficient to establish mutual assent to arbitrate).[42]

## II.    Plaintiff Lee did not agree to arbitrate purchases from Ticketmaster Verified.

Plaintiff Lee also purchased secondary tickets from ticketmaster.com.[43]   For the same reasons set forth above in section I(B), Ticketmaster cannot establish mutual assent to arbitrate as to these purchases.  Plaintiff Lee created his account approximately 25 years ago, before Ticketmaster included an arbitration provision in its terms of use at account formation—and it has provided no evidence that it provided notice to consumer that there was a *change in terms* from when they were introduced in 2003 and altered to include an arbitration provision in 2011.

Thus, even though Ticketmaster.com includes a notice that completing a purchase indicates agreement with the terms of use, there is no evidence that it provided plaintiff Lee with any basis to believe that his terms had changed.  As stated by Judge Tiger in *Rodman v. Safeway*, "generally parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side."[44]   Otherwise, "every individual consumer would be expected to scrutinize the Special Terms every time she seeks to purchase groceries from Safeway.com."[45] But the online retailer "is best positioned to make sure customers are aware of changes that Safeway has made to its contract with Class Members" by taking "any number of actions."[46]   Ticketmaster provides no evidence that it alerted plaintiff Lee to the change in the terms to include arbitration.

---

[41] *See* Mot. at 9-12 (collecting cases).  And *Nevarez*, 2017 WL 3492110, *Goza v. Multi-Purpose Civic Ctr. Facilities Bd.*, 2014 WL 3672128 (W.D. Ark. July 23, 2014), and *Druyan v. Jagger*, 508 F. Supp. 2d 228 (S.D.N.Y. 2007), did not address Ticket Exchange terms of use.

[42] *Nguyen*, 763 F.3d at 1179.

[43] Moon Decl., at ¶¶ 8, 10.

[44] 2015 WL 604985, at *11, *citing Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007).

[45] *Id.*

[46] *Id.*

### III.   Plaintiffs Ameri and Lee's purported arbitration agreements are unenforceable.

#### A.   The arbitration provisions are unconscionable and therefore unenforceable.

"The core concern of the unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."[47]  So unconscionability has both procedural and substantive elements.[48]  These elements are measured on a "sliding scale" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required … and vice versa."[49]  Unconscionability is a valid defense to a petition to compel arbitration.[50]

#### 1.   The arbitration provisions are procedurally unconscionable contracts of adhesion foisted on consumers on a take-it-or-leave-it basis.

Procedural unconscionability focuses on "oppression" and "surprise," and the presence of either renders a contract procedurally unconscionable.[51]  The "analysis begins with an inquiry into whether the contract is one of adhesion."[52]  "Oppression results where there is no real negotiation of contract terms because of unequal bargaining power," and "[s]urprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms."[53]

Here, the putative contracts containing the arbitration provisions are undeniably contracts of adhesion, which the California Supreme Court defines as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."[54]  This on its own renders Ticketmaster's arbitration provisions procedurally unconscionable.[55]  The arbitration provisions are also oppressive

---

[47] *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013).

[48] *Armendariz v. Found. Health Psychcare Serv's Inc*., 24 Cal. 4th 83, 114 (2000).

[49] *Id.*

[50] 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011); *Sonic-Calabasas*, 57 Cal. 4th at 1145.

[51] *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993).

[52] *Armendariz*, 24 Cal. 4th at 113.

[53] *Patterson*, 14 Cal. App. 4th at 1664.

[54] *Armendariz*, 24 Cal. 4th at 113.

[55] *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("An agreement or any portion

because of its far superior bargaining power.[56]  And the arbitration provisions are buried deep in

prolix forms presented in small font—a textbook example of unconscionable "surprise."[57]

2.    **The arbitration provisions are also substantively unconscionable.**

First, the Ticketmaster arbitration provision lacks mutuality because it requires the

arbitration of all claims against Ticketmaster, but allows Ticketmaster to litigate its claims in court.

"[M]utuality is the paramount consideration when assessing substantive unconscionability," and

"requiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive

unconscionability under California law."[58]  As *Perez v. DirecTV Grp.* explained, this "doctrine

does not evidence a judicial hostility to arbitration; to the contrary, where a drafter of a contract of

adhesion believes that arbitration is good enough for all consumer claims but not for any claims it

may bring, it is the drafter who holds an aversion to arbitration."[59]

Ticketmaster's arbitration provision provides that all claims involving the conditional

license granted to consumers by its terms section entitled "Ownership of Content and Grant of

Conditional License" may be brought in court.[60]  The conditional license section is drafted in the

broadest possible terms, encompassing all conceivable aspects of a consumer's use of

Ticketmaster's website and the purchase of tickets and prohibiting an exhaustive list of activities by

users of the website.[61]  The broad terms of the conditional license section—which establish no

---

thereof is procedurally unconscionable if the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation."); *Chand v. Checksmart Fin. LLC*, No. 17-cv-3895-JSC, 2017 WL 3605221, at *3 (N.D. Cal. Aug. 22, 2017).

[56] *Lovig v. Best Buy Stores*, 2018 U.S. Dist. LEXIS 146473, at *20 (N.D. Cal. Aug. 28, 2018).

[57] *See* Tobias Decl., Ex. R at 5-6 (arbitration provision contained at the end of the Ticketmaster terms is preceded by 17 sections and 35 paragraphs of other material, and, unlike two of the three sections immediately preceding it, presented in lowercase text); *id.*, Ex. X at 9-12 (arbitration provision contained at the end of the Ticket Exchange terms is preceded by 26 other sections).

[58] *Pokorny*, 601 F.3d at 997, 1001; *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006); *Hermosillo v. Davey Tree Surgery Co.*, No. 18-cv-393-LHK, 2018 WL 3417505, at *18 (N.D. Cal. July 13, 2018); *Cisneros v. Am. Gen. Fin. Servs.*, No. 11-cv-2869-CRB, 2012 WL 3025913, at *7 (N.D. Cal. July 24, 2012); *Sonic-Calabasas*, 57 Cal. 4th at 1133-34, *citing Armendariz*, 24 Cal. 4th at 119.

[59] 251 F. Supp. 3d 1328, 1348 (C.D. Cal. 2017).

[60] Tobias Decl., Ex. R at 5; *see also id.* at 1-2.

[61] *Id.*  The conditional license section governs consumers' viewing of "content," which is defined to include Ticketmaster's website; all data, HTML code, source code, or software on the website; and all tickets obtained from the website.  *Id.* at 1-2.

obligations for Ticketmaster—together with the arbitration provision's carve-out of claims relating to that section, allow Ticketmaster to litigate its claims against consumers in court while simultaneously insisting on the arbitration of consumer claims against it.

Indeed, Ticketmaster's litigation conduct demonstrates that non-mutuality is precisely the objective of its arbitration provision.  In *Ticketmaster v. Prestige Entertainment,* currently pending in the Central District of California, Ticketmaster sued several defendants for using bots, fake accounts, and other automated means to purchase tickets for secondary resale at inflated prices.[62] This is the same conduct that, facilitated by Ticketmaster, injured plaintiffs here.  Nevertheless, Ticketmaster insists on arbitration in this case—where it is the defendant—while invoking the conditional license carve-out to justify litigation in court in *Prestige Entertainment*—where it is the plaintiff.[63]  This "obviously favor[s] the drafting party"[64] and is the "paradigmatic form of substantive unconscionability under California law."[65]  Simply put, "an arbitration agreement that compels arbitration for claims of the individual but exempts from arbitration those claims of the corporation is substantively unconscionable."[66]

Second, the Ticketmaster arbitration provision lacks mutuality and is unconscionable because it precludes consumers, *but not Ticketmaster*, from recovering attorney's fees—even if consumers are entitled to such fees by law.  The arbitration provision flatly states: "in no event will we pay for attorney's fees," but contains no reciprocal protection for consumers.[67]  This non-mutuality renders the fee provision unconscionable "on that basis alone."[68]

Moreover, "[a]ttorney's fee provisions are unconscionable when they preclude a plaintiff

---

[62] Berman Decl., Ex. 4 at ¶¶ 5-7, 29, 31, 33, 37, 41-53, 74-78.

[63] *Id*. at ¶ 2.

[64] *Cf. Tompkins v. 23andMe, Inc*., 840 F.3d 1016, 1031 (9th Cir. 2016), *citing Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 916 (2015).

[65] *Pokorny*, 601 F.3d at 1001; *see also Ferguson v. Countrywide Credit Indus*., 298 F.3d 778, 784-85 (9th Cir. 2002); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004).

[66] *Aguirre v. Vivint Solar Developer, LLC*, No. 17-cv-1197-JLT, 2018 WL 1709972, at *5 (E.D. Cal. Apr. 9, 2018); *see also Perez*, 251 F. Supp. 3d at 1346, 1348.

[67] Tobias Decl., Ex. R at 6.

[68] *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 800 (2012).

from recovering attorney's fees that the plaintiff would otherwise be entitled to under statutory law."[69]  Here, plaintiffs seek statutory attorney's fees under the Cartwright Act and the Penal Code, and pursuant to section 1021.5 for their UCL claims.[70]  So Ticketmaster's attempted preclusion of these statutory fees is unconscionable.  And a comparison of *Prestige Entertainment*—where, as a plaintiff, Ticketmaster seeks attorney's fees for no less than six claims[71]—to the present case— where, as a defendant, Ticketmaster insists that plaintiffs are foreclosed from recovering such fees at all—demonstrates precisely the one-sidedness of Ticketmaster's arbitration provision.

Third, both the Ticketmaster and Ticket Exchange arbitration provisions are unconscionable, because they preclude consumers from seeking public injunctive relief in any forum.  Public injunctive relief is that sought "for the benefit of the general public" and is "designed to prevent further harm to the public at large."[72]  Arbitration provisions precluding a party's right to seek public injunctive relief are against public policy and unenforceable.[73]

Here, plaintiffs explicitly seek such relief under the UCL.[74]  But the Ticketmaster arbitration provision states that an "arbitrator can award on an *individual basis* the same damages and relief as a court (including injunctive and declaratory relief…)" and "any dispute resolution proceedings will be conducted *only on an individual basis*…."[75]  Similarly, the Ticket Exchange arbitration provision

---

[69] *Lang v. Skytap, Inc.*, No. 18-cv-1292-KAW, 2018 WL 5304842, at *6 (N.D. Cal. Oct. 24, 2018); *Smith v. VMware, Inc.*, No. 15-cv-3750-TEH, 2016 WL 54120, at *4 (N.D. Cal. Jan. 5, 2016); *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 183 (2015).  *23andMe*—which holds that a "bilateral" clause providing attorney's fees to the "prevailing party" in arbitration is not unconscionable—has no impact here, where Ticketmaster's attorney's fees provision is not "bilateral" or a "prevailing party" clause, but instead protects only Ticketmaster from paying attorney's fees.  *See* 840 F.3d at 1024-25.  *23andMe* is also distinguishable because plaintiffs there, unlike plaintiffs here, made no claim that they were entitled to statutory attorney's fees.  After *23andMe*, courts continue to recognize that "attorney's fees provisions are unconscionable when they preclude a plaintiff from recovering attorney's fees that the plaintiff would otherwise be entitled to under statutory law."  *Lang*, 2018 WL 5304842, at *6; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (an arbitration agreement may not waive a "party's right to pursue statutory remedies").

[70] *Ameri* Complaint, 18-cv-6750-VC, ECF 1-1, ¶¶ 35-38, 44-47, 64; *Lee*, ¶ 65.

[71] Berman Decl., Ex. 4 at ¶¶ 100, 110, 115, 120, 178, 183.

[72] *McGill v. Citibank*, 2 Cal. 5th 945, 955 (2017).

[73] *McGill*, 2 Cal. 5th at 951-52.  And the *McGill* rule is not preempted by the FAA.  *See Adkins v. Comcast Corp.*, 2018 WL 4846548, at *1 (N.D. Cal. Feb 15, 2018) (Chhabria, J.).

[74] *Ameri*, ¶¶ 20, 70-76; *Lee*, ¶¶ 64-65 & Prayer for Relief.

[75] Tobias Decl., Ex. R at 6.

states: "The arbitrator may award declaratory or injunctive relief *only in favor of the individual party seeking relief* and only to the extent necessary to provide relief warranted by the party's *individual claim*."[76] These "individual basis" and "individual party" limitations preclude public injunctive relief. As *McGill* states, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff ... does not constitute public injunctive relief."[77] So arbitration provisions similar to those here have been held unenforceable.[78]

### 3. The arbitration provisions are permeated with unconscionability.

When a contract contains unconscionable provisions, a court may refuse to enforce the contract, sever unconscionable clauses, or limit their application to avoid any unconscionable result.[79] Where a contract is permeated with unconscionable provisions, that is, where the contract "contains more than one unlawful provision," or there is "no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement," these factors weigh against severance and in favor or invalidating the entire agreement.[80] "The overarching inquiry is whether the interests of justice would be furthered by severance."[81] Here, particularly with respect to the Ticketmaster arbitration provisions, there is no single provision that can be struck to remove the unconscionable taint. Ticketmaster's systematic effort to disadvantage consumers should not be rewarded, and the interests of justice strongly counsel against enforcing its arbitration provisions.

### B. The Court should decide the enforceability of the unconscionable provisions.

#### 1. The Ticketmaster arbitration provision does not clearly and unmistakably delegate arbitrability to the arbitrator and is unconscionable.

The question of arbitrability is decided by the Court "unless the parties clearly and unmistakably provide otherwise."[82] But "even broad arbitration clauses that expressly delegate the

---

[76] *Id.,* Ex. X at 11.

[77] 2 Cal. 5th at 955.

[78] *See McArdle v. AT&T Mobility LLC*, No. 09-cv-1117-CW, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017); *Roberts v. AT&T Mobility LLC*, No. 15-cv-3418-EMC, 2018 WL 1317346, at *8, 9 (N.D. Cal. Mar. 14, 2018).

[79] Cal. Code Civ. § 1670.5(a).

[80] *See Armendariz*, 24 Cal. 4th at 124; *Nagrampa*, 469 F.3d at 1293.

[81] *Armendariz*, 24 Cal. 4th at 124.

[82] *Commc'ns. Workers*, 475 U.S. at 649.

enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard."[83]

Here, the Ticketmaster arbitration provision's delegation clause is rendered uncertain by the conditional license carve-out. As discussed above, it is drafted in broad terms to allow Ticketmaster to pursue claims against consumers outside of arbitration. But this same overbreadth precludes a clear and unmistakable delegation of arbitrability to the arbitrator. The arbitration provision's carve-out provides that if a claim "involves" the conditional license, it may be filed in state or federal court, with no component of the claim whatsoever subject to arbitration.[84] The conditional license section of the terms of use, in turn, defines this conditional license so broadly that it explicitly encompasses the mere "view[ing]" of the site.[85] Plaintiffs' claims here involve their viewing of Ticketmaster's website, and it is therefore not "clear and unmistakable" that they fall outside of the carve-out and within the reach of the delegation clause. And this is particularly true given the basic principle that any ambiguity in a contract is construed against the drafting party.[86]

Moreover, the delegation clause in the Ticketmaster arbitration provision is unconscionable. The delegation clause is procedurally unconscionable for the same reasons that the arbitration provision as a whole is procedurally unconscionable: it is adhesive, presented on a take-it-or-leave-it basis by the party with greater bargaining power, and is near the end of a prolix form. And the delegation clause is substantively unconscionable because the arbitration provision's one-way attorney's fees prohibition[87] precludes plaintiffs from recovering attorney's fees for challenging the question of arbitrability before an arbitrator, despite their statutory entitlement to such fees as remedies for their underlying claims.[88]

---

[83] *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-3408-JST, 2016 WL 946112, at *6 (N.D. Cal. Mar. 14, 2016); *Ajamian*, 203 Cal. App. 4th at 792.

[84] Tobias Decl., Ex. R at 5.

[85] *Id*. at 2.  ("We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content….").

[86] Cal. Code of Civ. Proc § 1864; Restatement (Second) of Contracts § 206 (1981).

[87] *See* section III(A)(2).

[88] *Saravia v. Dynamex, Inc*., 310 F.R.D. 412, 421 (N.D. Cal. 2015) (delegation clause unconscionable where plaintiff "would face the possibility of having to pay attorney's fees to [defendant] if he lost at arbitration, even as to the limited issue of arbitrability," but "would not face

Finally, in light of Ticketmaster's position taken in *Prestige Entertainment*, any argument that the delegation clause here clearly delegates the arbitrability of plaintiffs' claims to the arbitrator necessarily demonstrates the non-mutuality and unconscionability of the delegation clause.  As discussed above, in *Prestige Entertainment*, Ticketmaster filed suit in federal court based on the same underlying facts at issue here, invoking the conditional license carve-out in the arbitration provision as the basis for doing so.[89]  Ticketmaster cannot have its cake and eat it too: the carve-out either allows plaintiffs' claims, like Ticketmaster's claims, to be litigated entirely in court, or requires the arbitration and delegation of only plaintiffs' claims.  Ticketmaster takes the latter position, and the delegation clause is unconscionable and unenforceable.

### 2. The Ticket Exchange arbitration provision does not clearly and unmistakably delegate arbitrability to the arbitrator.

Like the Ticketmaster arbitration provision, the Ticket Exchange arbitration provision does not clearly and unmistakably delegate the issue of arbitrability to the arbitrator.  It provides: "If any part or parts of this Agreement are found to be invalid or unenforceable by a decision of a tribunal of competent jurisdiction, then such specific part or parts shall be of no force and effect and shall be severed…"[90]  Numerous courts have held that similar or nearly identical language forecloses any argument that arbitrability has been clearly delegated to the arbitrator.[91]  So too here.

### CONCLUSION

For all these reasons, plaintiffs respectfully request that defendants' motion be denied.

---

such a risk if he is permitted to vindicate his rights to be free from an unconscionable contract in court"); *Lang,* 2018 WL 5304842, at *6 (preclusion of statutory attorney's fees unconscionable).

[89] *See* section III(A)(2).

[90] Tobias Decl., Ex. X at 11.

[91] *Parada v. Super. Ct.,* 176 Cal. App .4th 1554, 1565-66 (2009); *Baker v. Osborne Dev. Corp.,* 159 Cal. App. 4th 884, 891, 893-94 (2008); *see also, Ajamian,* 203 Cal. App. 4th at 792 ("where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the court might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator").

DATED: December 21, 2018          HAGENS BERMAN SOBOL SHAPIRO LLP

                                  By:___/s/ Steve W. Berman_____
                                  Steve W. Berman (admitted *pro hac vice*)
                                  1301 Second Ave, Suite 2000
                                  Seattle, WA 98101
                                  (206) 623-7292
                                  steve@hbsslaw.com

                                  Elaine T. Byszewski (SBN 222304)
                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                  301 North Lake Avenue, Suite 920
                                  Pasadena, CA  91101
                                  (213) 330-7150
                                  elaine@hbsslaw.com

                                  *Attorneys for Plaintiff Allen Lee and the Proposed Class*

DATED: December 21, 2018          AIMAN-SMITH & MARCY

                                  By:____/s/ Randall B. Aiman-Smith_____
                                  Randall B. Aiman-Smith (SBN 124599)
                                  Reed W.L. Marcy (SBN 191531)
                                  Hallie Von Rock (SBN 233152)
                                  Carey A. James (SBN 269270)
                                  Brent A. Robinson (SBN 289373)
                                  7677 Oakport St. Suite 1150
                                  Oakland, CA 94621
                                  (510) 817-2711
                                  ras@asmlawyers.com
                                  rwlm@asmlawyers.com
                                  hvr@asmlawyers.com
                                  caj@asmlawyers.com
                                  bar@asmlawyers.com

                                  *Attorneys for Plaintiff Mahmoud Ameri and the Proposed Class*