LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
    dan.wall@lw.com
  Timothy L. O'Mara (Bar No. 212731)
    tim.o'mara@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster LLC
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLEN LEE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TICKETMASTER LLC, a Virginia corporation, LIVE NATION ENTERTAINMENT, INC., a Delaware corporation,<br><br>Defendants. | Case Nos. 3:18-cv-05987-VC & 3:18-cv-06750-VC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable Vince Chhabria<br><br>Hearing Date: March 7, 2019<br>Hearing Time: 10:00 am<br>Courtroom: 4 |
| MAHMOUD AMERI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TICKETMASTER LLC, and DOES 1-10, inclusive<br><br>Defendants. | |

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT........................................................................................................1

    A. Plaintiffs Agreed to Arbitrate the Claims Asserted in These Cases ........................1

        1. Plaintiffs Concede That Mr. Ameri Accepted the Terms ............................1

        2. Plaintiff Lee Also Unquestionably Accepted the Terms .............................1

            a. The Ticketmaster Terms ...................................................................1

            b. The TicketsNow / TicketExchange Terms ......................................3

    B. The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator ....................................................................................................5

    C. In Any Event, Any "Gateway" Arbitrability Questions Are Easily Answered in Favor of Arbitration..................................................................................7

        1. The Terms Are Not Procedurally Unconscionable.....................................7

        2. The Terms Also Are Not Substantively Unconscionable............................7

III. CONCLUSION...................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*,
  No. 17-04383, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) ..................................................5

*Bauer v. Atlantis Events, Inc.*,
  No. 13-05290, 2014 WL 12603112 (C.D. Cal. Mar. 5, 2014) ...................................................7

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ............................................................................................5, 6, 7

*Daniel v. eBay*,
  319 F. Supp. 3d 505 (D.D.C. 2018) ........................................................................................2

*Fouts v. Milgard*, No. 11-06269,
  2012 WL 1438817 (N.D. Cal. Apr. 25, 2012) .........................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  ___ S. Ct. ___, 2019 WL 122164 (Jan. 8, 2019) ................................................................5, 6, 7

*Hines v. Anchor Motor Freight, Inc.*,
  424 U.S. 554 (1976) .................................................................................................................6

*In re iPhone Application Litig.*,
  No. 11-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...................................................7

*Johnson v. JP Morgan Chase Bank, N.A.*,
  No. EDCV 17-2477, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ..................................9, 10

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) .................................................................................................9

*Loewen v. Lyft, Inc.*,
  129 F. Supp. 3d 945 (N.D. Cal. 2015) .....................................................................................7

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ...............................................................................................................9

*McRae v. Super. Ct.*,
  221 Cal. App. 2d 166 (1963) ...................................................................................................7

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ......................................................................................................3

*Nevarez v. Forty Niners Football Co., LLC*,
  No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208 (N.D. Cal. Aug. 15, 2017) ...............2, 3, 8

*Nicosia v. Amazon, Inc.*,
 834 F.3d 220 (2d Cir. 2016) ..........................................................................................3

*Pokrass v. The DirecTV Grp., Inc.*,
 No. 07-423, 2008 WL 2897084 (C.D. Cal. July 14, 2008) ............................................7

*Rappley v. Portfolio Recovery Assocs., LLC*,
 No. 17-108, 2017 WL 3835259 (S.D. Cal. Aug. 24, 2017) .........................................10

*Rodman v. Safeway*,
 No. 11-3003, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015).........................................2

*Sanchez v. Valencia Holding Co. LLC*,
 61 Cal. 4th 899 (2015).................................................................................................9

*Tompkins v. 23andMe, Inc.*,
 840 F.3d 1016 (9th Cir. 2016).....................................................................................9

*U.S. v. Drew*,
 259 F.R.D. 449 (C.D. Cal. 2009).................................................................................4

*Wright v. Sirius XM Radio Inc.*,
 No. 16-1688, 2017 WL 4676580 (C.D. Cal. June 1, 2017).....................................7, 10

## I. INTRODUCTION

Plaintiffs' opposition consists of two main arguments: (1) Mr. Lee did not agree to the arbitration clauses, and (2) with respect to both Mr. Lee and Mr. Ameri, the arbitration clauses are unconscionable and, therefore, not enforceable. Both arguments fail. There is no question that Mr. Lee agreed to the arbitration clauses at issue; it was literally impossible for him to purchase tickets without doing so. And the case law is crystal clear that challenges to the enforceability of an arbitration clause are not properly before the Court where the arbitration clause clearly and unmistakably delegates the question of arbitrability to the arbitrator. That is unequivocally the case here. In any event, far from being unenforceable, the specific terms that Plaintiffs are challenging here have in fact been enforced, *repeatedly*, including in this district. There is no sound basis for this Court to reject Defendants' motion to compel arbitration on any of the grounds that Plaintiffs invoke.

## II. ARGUMENT

### A. Plaintiffs Agreed to Arbitrate the Claims Asserted in These Cases

#### 1. *Plaintiffs Concede That Mr. Ameri Accepted the Terms*

Plaintiffs do not dispute that Mr. Ameri accepted the www.ticketmaster.com Terms of Use (the "Ticketmaster Terms"). There is thus no question that Mr. Ameri agreed to arbitrate this dispute.

#### 2. *Plaintiff Lee Also Unquestionably Accepted the Terms*

##### a. The Ticketmaster Terms

When Mr. Lee purchased tickets from www.ticketmaster.com during the period alleged (i.e., 2016 to 2018), there is no question that he followed the *exact same* user flow as Mr. Ameri, which is set forth in detail in Defendants' opening papers: for each purchase, he was required to assent to the Ticketmaster Terms at sign in <u>and</u> at the point of purchase. Mot. to Compel Arb. at 3-5, ECF No. 25 ("Mot"). Nevertheless, Plaintiffs inexplicably claim that Mr. Lee, unlike Mr. Ameri, did not accept the Terms. The basis of this argument is Mr. Lee's claim that he created his www.ticketmaster.com account 25 years ago, before the Terms contained an arbitration clause. *See* Opp'n to Mot. Compel Arb. at 8, ECF No. 29 ("Opp'n"). That contention is false: there were no www.ticketmaster.com accounts 25 years ago, because Ticketmaster did not even conduct online sales at that point—and moreover, Ticketmaster's data shows that Mr. Lee in fact created his account in 2002. *See* Reply K.

Tobias Decl. in Supp. of Mot. to Compel Arb. ¶¶ 3-4 ("Reply Tobias Decl."). More importantly, Mr. Lee agreed to the Ticketmaster Terms *each time* he made a purchase during the relevant period. *See* Mot. at 3-5, 11. Between 2016 and 2018, Mr. Lee made thirteen separate purchases of secondary tickets from www.ticketmaster.com. Moon Decl. ¶ 10, ECF No. 27. That amounts to *more than 20* acceptances of the Ticketmaster Terms and the arbitration agreement therein during that period.

The cases that Mr. Lee cites regarding contract formation are thus inapposite. For instance, in *Rodman* and *Daniel*, the plaintiffs assented once, at registration, to the terms (which, at that time, did not contain the clause at issue); the clause at issue was subsequently added to the terms, but the plaintiffs were never asked to assent to the terms after that revision was made. *Rodman v. Safeway*, No. 11-3003, 2015 WL 604985, at *11 (N.D. Cal. Feb. 12, 2015); *Daniel v. eBay*, 319 F. Supp. 3d 505, 511-12 (D.D.C. 2018). Mr. Lee, by contrast, was required to assent to the current Terms (which contained the arbitration clause) *each time* he signed into his account and purchased tickets during the relevant period. In a case specifically involving Ticketmaster's Terms, a court in this district found that this constitutes agreement to the current Terms. In reaching that conclusion, the court expressly rejected the exact argument that Mr. Lee makes here. *Compare* Opp'n to Mot. to Dismiss & Compel Arb. at 7, *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, ECF No. 67 (June 16, 2017) (arguing that "[i]t was impossible for Plaintiffs to have assented to arbitration when they signed up in 2006 because Defendants' TOU did not include an arbitration agreement at that time"), *with Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208, at *9, *25 (N.D. Cal. Aug. 15, 2017) (granting motion to compel arbitration; holding that plaintiffs assented to Ticketmaster's Terms when they signed in and purchased tickets).

Mr. Lee nevertheless claims that Ticketmaster's sign-in page does not provide reasonable notice of its Terms. Opp'n at 5-6. Apparently conceding that the sign-in page for Ticket Exchange *is sufficient*, Mr. Lee compares the sign-in pages on www.ticketexchangebyticketmaster.com and www.ticketmaster.com, and argues that the latter, unlike the former, "offer[s] insufficiently

conspicuous notice." *Id.* at 5.[1] But the sign-in pages on these two websites are substantially identical: the www.ticketmaster.com sign-in page is uncluttered; the user need not scroll to find notice of the terms; the dark print of the notice contrasts against the white background; and the hyperlink is in bold and contrasting color.[2] *Compare Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (plaintiff manifested assent to terms when provided with a substantially similar notice as here). Moreover, numerous courts—including a court in this district considering Ticketmaster's website— have enforced arbitration agreements where notice of the terms was adjacent to a "sign-in" or "place order" button. *See Nevarez*, 2017 U.S. Dist. LEXIS 131208, at *25; Mot. at 10-12 & n.4 (collecting cases). And, in any event, the page on which users *purchase* tickets also requires assent to the terms, Mot. at 5, and Mr. Lee concedes that that page provides sufficient notice of the terms, Opp'n at 6.

### b. The TicketsNow / TicketExchange Terms

Mr. Lee also repeatedly manifested his assent to the www.ticketexchangebyticketmaster.com and www.ticketsnow.com Terms and Conditions (the "TicketsNow / TicketExchange Terms"). The complaint alleges that Mr. Lee used ticketexchangebyticketmaster.com to purchase tickets for "nine sporting events held in 2016 through 2018," Lee Compl. ¶ 7, during which time the Terms contained an arbitration clause, Mot. at 7-8. Ticketmaster's sales data shows that, during this period, Mr. Lee's first two purchases were both on April 2, 2016. Moon Decl. ¶¶ 9(a)-(b), ECF. No. 27. To make each of those purchases, Mr. Lee was required to affirmatively accept the Terms by checking a box next to a bright red disclaimer: "You must confirm that you read and agree to the Terms & Conditions to place your order." Tobias Decl. ¶ 23, ECF No. 26; *id*. Ex. O, ECF No. 26-15. Those Terms made clear that Mr. Lee's purchases of tickets from the site, and any claims related to any such purchase, were governed by the Terms, which included an agreement to arbitrate. Courts have "routinely upheld" contracts "requir[ing] a user to affirmatively click a box on the website acknowledging

---

[1] The screenshots that Plaintiffs' use in their opposition have been deceptively resized so that they are a fraction of their actual size on the websites.

[2] The www.ticketmaster.com sign-in page is nothing like the screen held insufficient in *Nicosia v. Amazon, Inc.* (Opp'n at 5-6), which was crowded with "between fifteen and twenty-five links," and had text in "at least four font sizes and six colors … alongside multiple buttons and promotional ads." 834 F.3d 220, 236-37 (2d Cir. 2016).

awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *U.S. v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009).[3]

Mr. Lee does not seriously dispute this; instead, he argues that the TicketsNow / TicketExchange Terms did not put him "on notice" that he was agreeing to arbitration with respect to his purchases, because those Terms refer to "TicketsNow" not "TicketExchange" (and he claims that the latter, not the former, is the website he used). Opp'n at 7. As explained in Defendants' opening papers, www.ticketexchangebyticketmaster.com is a domain which sits on the TicketsNow platform (www.ticketsnow.com); it acts as a navigation page which links buyers to team- or league-branded event pages on Ticketmaster's websites, including www.ticketsnow.com Mot. at 2-3; Tobias Decl. ¶ 5, ECF No. 26. Based on Mr. Lee's allegation that he purchased his tickets from TicketExchange, Defendants accepted in the opening papers that he did in fact culminate his purchase on that website. But in light of the argument in Plaintiffs' opposition—i.e., that Mr. Lee was not given adequate notice that the Terms applied to his purchases because he did not buy his tickets on TicketsNow—Defendants performed an additional investigation of Mr. Lee's purchases. Reply Tobias Decl. ¶¶ 6-8. That investigation revealed that although Mr. Lee's nine purchases during the relevant period (each of which was to a San Jose Sharks game, *see* Moon Decl. ¶ 9, ECF No. 27) *began* on the TicketExchange navigation page,[4] they were in fact *made* on www.ticketsnow.com. Reply Tobias Decl. ¶¶ 9-10. Specifically, for each of these purchases, Mr. Lee navigated to purchase pages on, and ultimately purchased the tickets at issue from, a TicketsNow page. *Id.*[5] Therefore, Mr. Lee's claim that the TicketsNow / TicketExchange Terms did not put him "on notice" fails,

---

[3] Furthermore, when Mr. Lee made his subsequent purchases, he would have signed in using his www.ticketmaster.com account, which also required manifesting assent to the Terms. *See supra* § II.A.2.a; Mot. at 6-7; Tobias Decl. ¶ 24, ECF No. 26; Opp'n at 6.

[4] For this reason, Ticketmaster's data categorized Mr. Lee's purchases as TicketExchange purchases. *See* Moon Decl. ¶ 9, ECF No. 27; Reply Tobias Decl. ¶ 9.

[5] As explained in Defendants' opening papers and above, the interface on www.ticketsnow.com is <u>identical</u> to that on www.ticketexchangebyticketmaster.com, except for the banner at the top of each page. Tobias Decl. ¶ 22, ECF No. 26; Reply Tobias Decl. ¶ 11. Mr. Lee's acceptance of the Terms at various points would thus have been the same, regardless of which site he was on.

because he did in fact make his purchase on www.ticketsnow.com.

**B.     The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator**

Despite their acceptance of the Terms, Plaintiffs' opposition purports to raise questions as to the enforceability or applicability of the arbitration agreement in those Terms. These are "gateway" questions concerning the arbitrability of the dispute. Where (as here) the arbitration clause clearly and unmistakably delegates questions of arbitrability to the arbitrator, such questions must be sent to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-04383, 2018 WL 6268876, at *3 (N.D. Cal. Nov. 30, 2018).

The Supreme Court's recent decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ S. Ct. ___, 2019 WL 122164 (Jan. 8, 2019), unequivocally reinforced this rule. There, the Court explained that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. at *3. Where the parties have done so, "a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*. at *4. Thus, the only question before the Court is whether the arbitration clauses clearly delegate the question of arbitrability to the arbitrator. If so, then the Court must grant Defendants' motion and send these cases to arbitration.

As explained in Defendants' opening papers, the arbitration clauses at issue unquestionably delegate questions of arbitrability to the arbitrator. *See* Mot. at 13-15. Specifically, the applicable terms give the arbitrator "exclusive authority … to resolve all disputes arising out of or relating to ***the interpretation, applicability, enforceability or formation of this Agreement*** … ." Tobias Decl. Ex. R at 6, ECF No. 26-18 (emphasis added); *id*. Ex. W at 10, ECF No. 26-23 (virtually identical language); *see also id*. Exs. S-V, X-Z, ECF Nos. 26-19 – 26-22, 26-24 – 26-26 (prior versions; same).

In opposition, Plaintiffs do not claim that the delegation itself is somehow unclear—nor could they. *See* Mot. at 14 (collecting cases finding substantially identical delegation clauses to be clear and unmistakable). Rather, with respect to the Ticketmaster Terms, Plaintiffs claim that (1) a carve-

5   REPLY IN SUPP. OF MOT. TO COMPEL ARBITRATION
CASE NOS. 3:18-CV-05987-VC, 3:18-CV-06750-VC

out for claims related to a conditional license in the Terms somehow renders delegation uncertain, and (2) the delegation clause is unconscionable because the arbitration clause, as a general matter, is unconscionable. *See* Opp'n at 14-15. Both arguments fail. As explained in detail below, *infra* § C.2, Plaintiffs' argument regarding the conditional license mischaracterizes that license and the nature of the carve-out for claims related to it. But more importantly, Plaintiffs' argument about the conditional license does not actually relate to *who* decides arbitrability (or whether the "who" is clear).[6] Instead, this argument relates to whether Plaintiffs' claims fall within the scope of the arbitration clause—and the arbitration clause clearly and unmistakably delegates that particular question (i.e., "applicability") to the arbitrator. Likewise, Plaintiffs' unconscionability argument goes to the enforceability of the arbitration clause as a general matter, not to whether delegation is somehow unclear.[7] Again, the arbitration clause clearly and unmistakably delegates these questions (i.e., "enforceability") to the arbitrator. The law is clear that, where the arbitration clause does so, "a court possesses no power to decide the arbitrability issue." *Henry Schein*, 2019 WL 122164, at *4.

With respect to the virtually identical delegation clause in the TicketsNow / TicketExchange Terms, Plaintiffs make an entirely different argument: they claim that the severability clause somehow renders delegation uncertain, because it refers to a decision about enforceability by "a tribunal of competent jurisdiction." Opp'n at 15. The thrust of the argument seems to be that the word "tribunal" is unclear. Plaintiffs, however, do not cite to a single case holding that the word "tribunal" is ambiguous, or somehow renders delegation unclear. Moreover, arbitration is routinely referred to as a "tribunal." *See, e.g.*, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976) (courts "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes."); *McRae v. Super. Ct.*, 221 Cal. App.

---

[6] Plaintiffs do not cite a single case supporting their argument that a conditional license provision renders a delegation clause unclear or uncertain.

[7] Indeed, none of Plaintiffs' unconscionability arguments are specific to the delegation clause (*compare* Opp'n at 9-13, *with id.* at 13-15); therefore, those arguments must be submitted to the arbitrator, because the only question for the Court with respect to unconscionability is whether the delegation clause itself is unconscionable, *see Brennan*, 796 F.3d at 1133. In any event, Plaintiffs' unconscionability arguments fail for the reasons discussed *infra*, § II.C.

2d 166, 172 (1963) (arbitration is "a means of promptly settling disputes in a 'non-judicial' tribunal").

The delegation clauses in the terms are clear and unmistakable. Therefore, Plaintiffs' challenge to "gateway" arbitrability questions must be sent to arbitration. *Henry Schein*, 2019 WL 122164, at *3-4; *Brennan*, 796 F.3d at 1130-32.

    **C.    In Any Event, Any "Gateway" Arbitrability Questions Are Easily Answered in Favor of Arbitration**

If the Court reaches Plaintiffs' challenges to the arbitrability of this dispute, the result would be the same: these cases must be sent to arbitration.

    *1.    The Terms Are Not Procedurally Unconscionable*

Plaintiffs claim that the arbitration clauses are void and unenforceable due to procedural unconscionability because they are "contracts of adhesion." Opp'n at 9, 14. Courts find that, where adhesion contracts cover non-essential recreational activities, those contracts are not procedurally unconscionable because "the consumer always has the option of simply foregoing the activity." *Pokrass v. The DirecTV Grp., Inc.*, No. 07-423, 2008 WL 2897084, at *6 (C.D. Cal. July 14, 2008); *see also Bauer v. Atlantis Events, Inc.*, No. 13-05290, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014); *In re iPhone Application Litig.*, No. 11-2250, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). Here, Plaintiffs had the option to forego purchasing event tickets from Ticketmaster, which is plainly a non-essential recreational activity. Therefore, the arbitration clauses are not procedurally unconscionable. The Court's inquiry can and should stop there because California law requires both procedural *and* substantive unconscionability. *See Pokrass*, 2008 WL 2897084, at *6.[8]

    *2.    The Terms Also Are Not Substantively Unconscionable*

Plaintiffs make three arguments with respect to substantive unconscionability; they all fail.

---

[8] Plaintiffs also argue that "the arbitration provisions are buried deep in prolix forms presented in small font … a textbook example of unconscionable 'surprise.'" Opp'n at 10. Plaintiffs are wrong. The Terms have **bold** headings identifying the arbitration clause; the class action waiver is also called out in **bold**. *Compare* Tobias Decl. Exs. R-Z, *with Wright v. Sirius XM Radio Inc.*, No. 16-1688, 2017 WL 4676580, at *6 (C.D. Cal. June 1, 2017) (arbitration terms sufficiently conspicuous where "separated via headings and contained a capitalized disclaimer that arbitration waived [the] entitlement to a jury trial"). In any event, Ticketmaster "was under no obligation to highlight the arbitration clause" because "[a]ny state law imposing such an obligation would be preempted by the FAA." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015).

*First*, Plaintiffs claim that the arbitration clause in the Ticketmaster Terms is substantively unconscionable because it lacks mutuality due to a purported "one-way attorney's fees prohibition." Opp'n at 11-12, 14. This is a mischaracterization; the arbitration clause does *not* contain a "one-way attorney's fees prohibition." Rather, the Terms provide that: "We will reimburse [arbitration] fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous, but in no event will we pay for attorneys' fees." Tobias Decl. Ex. R, ECF No. 26-18. Construing the *exact* same language, Judge Koh held that "this clause only means that 'although Defendants will *automatically pay* for arbitration fees for small monetary claims *regardless of who the prevailing party* is,' Ticketmaster Defendants 'will not agree to do so for attorney's fees.'" *Nevarez*, 2017 U.S. Dist. LEXIS 131208, at *43. "Nothing in this language can be construed as a waiver of Plaintiffs' right to recover attorney's fees pursuant to a prevailing party provision in a statute." *Id.*; *see also Fouts v. Milgard*, No. 11-06269, 2012 WL 1438817, at *4 (N.D. Cal. Apr. 25, 2012). Indeed, such an interpretation would be inconsistent with the provision allowing the arbitrator to award "the same damages and relief as a court (including injunctive and declaratory relief or *statutory damages*)." Tobias Decl. Ex. R, ECF No. 26-18 (emphasis added).

*Second*, Plaintiffs claim that the arbitration clause in the Ticketmaster Terms is substantively unconscionable because it lacks mutuality due to a carve-out for claims related to a conditional license set forth in the Terms. Opp'n at 10-11, 14. This argument is, again, based on a mischaracterization of the Terms. The conditional license provides that Ticketmaster's website and its content are owned and copyrighted by Ticketmaster, and that Ticketmaster grants users a conditional license to that copyright (to view and use the site) in exchange for the users' agreement not to engage in certain conduct. Tobias Decl. Ex. R, ECF No. 26-18. If a user infringes Ticketmaster's intellectual property or jeopardizes the security of the site by engaging in the prohibited conduct, the arbitration clause allows Ticketmaster to file a lawsuit in court against that user. *Id.* But contrary to Plaintiffs' suggestion, the carve-out is mutual, not one-sided: if a user has a claim against Ticketmaster related to the conditional license, he or she may also file a claim in court. *Id.* The law in the Ninth Circuit is clear that companies may carve out intellectual property

and similar claims from arbitration clauses; doing so does not render the clause unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030-31 (9th Cir. 2016) (enforcing arbitration clause with a carve-out for "disputes relating to intellectual property rights, obligations, or any infringement claims"); *compare Sanchez v. Valencia Holding Co. LLC*, 61 Cal. 4th 899, 916 (2015) (arguably one-sided clause in arbitration agreement not unconscionable where it provided "the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need").[9]

*Third*, Plaintiffs argue that the arbitration agreements in the Ticketmaster Terms and TicketsNow / TicketExchange Terms are substantively unconscionable because "they preclude consumers from seeking public injunctive relief." Opp'n at 12-13. This argument is premised on the California Supreme Court's opinion in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). In evaluating *McGill* challenges, the threshold question is whether the plaintiff in the particular case at issue is in fact seeking public injunctive relief; if not, then the challenge fails. *See Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477, 2018 WL 4726042, at *8 (C.D. Cal. Sept. 18, 2018) (holding that, "[b]ecause the Court finds that Plaintiffs do not seek public injunctive relief, *McGill* does not apply and cannot be the basis for Plaintiffs to avoid arbitration").

Public injunctive relief remedies harm to the public at large, and benefits the plaintiff only incidentally, if at all. *McGill*, 2 Cal. 5th at 955; *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1060 (9th Cir. 2013). "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955. "Merely requesting relief which would … enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief," and "the size of a class cannot, on its own, elevate a class action

---

[9] Plaintiffs reference a lawsuit which Ticketmaster filed against Prestige Entertainment, claiming that Ticketmaster sued Prestige for "the same conduct that … injured plaintiffs here." Opp'n at 11-12, 15. This is another mischaracterization. That case alleges that Prestige violated the conditional license by engaging in the *precise* conduct prohibited by that license—including, for example, "using bots to access and navigate through Ticketmaster's website" and "circumvent Ticketmaster's security measures." *See* Berman Decl. Ex. 4 ¶ 5, ECF No. 30-4 (Prestige Complaint). Plaintiffs' claims, by contrast, do not concern the grant of the conditional license.

seeking injunction into a matter seeking public injunctive relief." *Johnson*, 2018 WL 4726042, at *7.

*Johnson* is instructive. There, plaintiffs alleged that JP Morgan was assessing improper fees, and brought claims on behalf of themselves and putative classes. *Id.* at *1. The court held that, while the complaint requested a general injunction *and public injunctive relief*, the relief they sought was nevertheless "intended to redress and prevent further injury to a group of plaintiffs who [had] already been injured by JPMorgan's allegedly unlawful practices." *Id.* at *7. Further, plaintiffs' requests for injunctive relief were "vague and generalized," leading the court to conclude that monetary relief was "the heart" of their claims, and that "any benefit bestowed on the public would be incidental to Plaintiffs' primary purpose of seeking redress for their own injuries." *Id.* The court thus held that, "[b]ecause … Plaintiffs do not seek public injunctive relief, *McGill* does not apply and cannot be the basis for Plaintiffs to avoid arbitration." *Id.* at *8.[10]

Plaintiffs here are not seeking public injunctive relief. To the contrary, the opposition characterizes these lawsuits as follows: "[Plaintiffs] sued Ticketmaster to recover the inflated prices they have paid for tickets." Opp'n at 1. And the complaints do not request any injunctive relief that would benefit the general public. Rather, the putative classes are limited to individuals who already purchased tickets on a Ticketmaster site—a circumscribed group which includes neither the general public nor future consumers who might pay allegedly higher prices for tickets. *See* Ameri Compl. ¶¶ 5-6; Lee Compl. ¶ 45; *compare Johnson*, 2018 WL 4726042, at *7 (*McGill* does not apply where "the individuals who stand to benefit are … an inherently circumscribed group"). The law is clear that this does not constitute public injunctive relief; *McGill* therefore does not apply.

### III. CONCLUSION

Defendants respectfully request that the Court compel individual arbitration and dismiss, or in the alternative stay, these actions.

---

[10] *See also Wright*, 2017 WL 4676580, at *9 (named plaintiff did not seek public injunctive relief because any benefit to the public was incidental); *Rappley v. Portfolio Recovery Assocs., LLC*, No. 17-108, 2017 WL 3835259, at *6 (S.D. Cal. Aug. 24, 2017) (named plaintiff did not seek public injunctive relief because relief would prevent injury to persons who already had been injured, not to the public at large).

Dated: January 17, 2019                    Respectfully submitted,

By: /s/ Timothy L. O'Mara
Timothy L. O'Mara
LATHAM & *WATKINS* LLP

*Attorneys for Defendants Ticketmaster LLC and Live Nation Entertainment, Inc.*